JAMES M. PAUL, APPELLANT, v. MISSOURI STATE LIFE INSURANCE COMPANY, RESPONDENT.—52 S. W. (2d) 437.

Kansas City Court of Appeals. June 13, 1932.

*Crawford & Harlan* for appellant.

*Montgomery & Montgomery* for respondent.

BLAND, J.—This is an action to recover upon the total permanent disability clause in a life insurance policy. The policy was issued by the defendant to plaintiff on October 1, 1927, under a group insurance arrangement with the Missouri Pacific Railroad Company, by whom plaintiff was employed as a boiler maker helper. The case was tried before the court without the aid of a jury, and upon an agreed statement of facts, resulting in a judgment for defendant. Plaintiff has appealed.

The material portion of the policy sued upon reads as follows:

"If the Employee shall furnish the Company due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to the Employee in full settlement of all obligations hereunder, the amount

of insurance in force hereunder on the Employee at the time of the approval by the Company of the proofs as aforesaid. . . .

"In addition to or independently of all other causes of total and permanent disability the Company will consider the entire and irrecoverable loss of the sight of both eyes, or the loss or use of both hands, or both feet, or of one hand and one foot as total and permanent disability within the meaning of this provision."

The policy provides that "this amount will be paid either in one sum or installments" but as insured elected to take it in one sum this part of the policy is not important.

The agreed statement of facts recites:

"That on or about the 19th day of December, 1928, and while said policy and certificate were in full force, plaintiff while engaged in his duties as an employee of the Missouri Pacific Railroad Company in Sedalia, Missouri, and while descending from the upper portion of a locomotive upon which he was working, came down upon a tool known as a rivet heating tong, in such a manner that one of the prongs of said tool was forced into his body between the rectum and lower end of his spine for a distance of about four inches; that as a result of said injury plaintiff was confined to the hospital or under the control of the Missouri Pacific Hospital and under the care of doctors and physicians, from the 19th day of December, 1928, until about the 15th day of June, 1930, and during all of said time was unable to pursue any gainful occupation; and before having attained the age of sixty years, because of said injury, was so disabled by said injury, that he was then wholly prevented thereby from engaging in any gainful occupation for a period of eighteen months, and that said disability existed for a period of six months and more, and during and at the expiration of the six months said disability was of such a character that the physicians in charge were unable to determine how long the disability would continue; that due proof of said disability was made to said company and accepted by said company, and that plaintiff has performed all the terms and conditions of said contract on his part and has demanded payment of the sum of $2,000 representing said sum payable under said contract, but that defendant has refused to pay said sum or any part thereof, and has denied liability under said contract; that on or about the 15th day of June, 1930, plaintiff resumed work as a boiler maker helper for the Missouri Pacific Railroad and has since said time been so engaged and employed."

Plaintiff contends that as the agreed statement of facts shows that he was totally disabled for a period of more than six months, to-wit, eighteen months, and, as the physicians in charge of his case were unable to determine how long his disability would continue after the expiration of said six months' period, his disability was permanent and that he is entitled to recover under the terms of the policy. In

this connection plaintiff says that permanent disability does not mean that the disability must last for life but that it need merely be of indefinite duration; that the policy contains words of a qualifying nature, to-wit, "he, or she, has been so permanently and totally disabled for a period of six months" indicating that the disability, in order to be permanent, need not last forever; that there exists a repugnancy between the "and will be at all times thereafter" clause and the "he, or she, has been so permanently and totally disabled for a period of six months" clause; that this repugnancy must be construed in favor of the insured; that the last mentioned clause is a specific provision, while the former is a general provision, and plaintiff cites cases holding the specific provisions in insurance policies should control. It is also insisted that the policy, properly construed, shows that, if disability continued for six months, the undertaking to pay upon due proof thereof, indicates the intention to pay for disability lasting for only six months. In other words that if disability last for that long, then it will be conclusively presumed to be permanent.

I fail to find any ambiguity or uncertainty in the provisions of this policy. I think that the purpose and intention is clearly manifested therein; that that part of the policy providing for life insurance was for the benefit of insured's beneficiary and that part of the policy providing for payment for total permanent disability was for the benefit of the insured and not the beneficiary. The only way in which it can be conclusively or absolutely established that a disability is permanent is to await the death of the person who suffers it and as before stated, as the disability clause was for the benefit of the insured, it is apparent that it was not intended that the insured should be required to prove a permanent disability of an absolute nature, but only should be required to adduce proof that the permanency of the disability, at the end of the six months' period, was reasonably certain and not absolutely certain. However, the company wanted to test for six months the character of the disability as to its permanency, and it would appear that it did not intend to agree to presume that the disability was permanent because it lasted for six months, regardless of its character whether permanent or not. The permanent character of the disability could be established, upon the expiration of the six months' period of its endurance, by the testimony of physicians as to their opinion as to the permanency of the disability or, if the facts were such that a layman would be capable of passing upon the question, it could be proved by plaintiff without expert testimony, or if plaintiff so desired it could be proved by a combination of both, if the circumstances would permit. However, it seems clear to me that the policy evinces the purpose of requiring a proof of disability of a lasting nature rather than temporary. The word "permanent" in policies of this kind, where there are no

qualifying clause, means lasting forever or until death. [Met. Life Ins. Co. v. Noe (Tenn.), 31 S. W. (2d) 689; Home Benefit Assn. v. Brown (Tex.), 16 S. W. (2d) 834; Spencer v. Kansas Cas. & Sur. Co., 116 Kan. 491; Colby v. Thompson, 207 S. W. 73.]

The real question in the case is whether the clause "he, or she, has been so permanently and totally disabled for a period of six months," creates an ambiguity in the contract. Does it provide for payment for permanent disability or one lasting until death, or for merely temporary disability? I am of the opinion that no ambiguity exists. All of the clauses seem to be entirely in harmony with each other and, if they are, each should be given equal weight. [State v. Cox, 322 Mo. 38.] It is quite apparent that the policy requires the concurrence of four elements in order to provide for payment thereunder: (1st) That before attaining the age of sixty years insured has become totally disabled by bodily injury or disease; (2nd) That because of such disability he is wholly prevented thereby from engaging in any gainful occupation; (3rd) That he, at all times in the future, will be wholly prevented by such disability from engaging in any gainful occupation; (4th) That such disability has lasted for six months.

It would be doing violence to the language of the policy, providing coverage for permanent disability, to say that it is sufficient to show a disability for merely a period of six months in order to establish a right to payment under the policy. In other words, I do not believe that the policy covers a mere disability of an indefinite duration, that is a temporary one, which might or might not last for the duration of insured's life.

It will be borne in mind, by the very nature of things, that the policy could not provide for proof of absolute disability. But, of course, the company was interested in having as much time as possible elapse, after the permanency of the disability became apparent, in order to test the question of its reality. It could have provided that it would pay upon the mere occurrence of such a character of disability without its having run any length of time, or it could have provided that it should run any number of days, weeks, months or years. But the owner of such insurance as this, covering total disability only, is primarily interested in receiving payment for his disability as soon as possible. If he is required to wait too long in order to receive payment, it may do him no good, as death might overtake him, in view of his condition, before he receives anything. It is apparent that while the company is desirous of having as much time elapse as possible in order to establish the actuality of the disability, it would not be able to sell policies of this kind if payments thereunder were deferred too long.

I find that, upon examination of the authorities, many policies provide for a testing period of as little as sixty days and some as

much as six months. Defendant has chosen to provide a waiting period of six months in this instance. There is nothing in the six months clause indicating that, should the disability continue for six months, it should be conclusively presumed to be permanent. The whole policy negatives any such idea. As before stated, the six months clause was for the purpose of determining, if possible, the reality of the disability, and, if at the end of that time it appeared with reasonable certainty that the disability would last for life, then the company obligated itself to pay. There are other clauses in the policy indicating that the permanency must be of a life-long character. The policy mentions the loss of certain members, such as an eye, hand or foot, as conclusively establishing permanent disability. These disabilities are of a character that last forever. The policy also provides for the payment of the full amount of the policy at the expiration of said six months' period. This indicates payment for total and permanent disability rather than for merely a temporary one.

This policy is unlike those involved in the cases of Laupheimer v. Mass. Mut. Life Ins. Co., 24 S. W. (2d) 1058; Wanstrom v. Aetna Life Ins. Co., 215 N. W. 93; Penn. Mutual Life Ins. Co. v. Milton, 160 Ga. 168; Mutual Life Ins. Co. of N. Y. v. Wheatley (Ky.), 47 S. W. (2d) 961. In each of those cases, while the policy provided for payment for permanent disability, it also provided for payments monthly, which were to be discontinued when the disability should cease. This language was construed as creating an ambiguity, which under the law, must be construed in favor of the insured, and to show the intention to pay for disability other than one lasting for life. The policy in the case at bar contains no such modifying language. It indicates payment for permanent disability only. The entire amount of the policy is to be paid upon the establishment of such disability. Payments were not to be divided up among several periodicial disabilities.

The case is also unlike that of Heralds of Liberty v. Jones, 142 Miss. 735. In that case the policy provided that if a member should become totally and permanently disabled and such disablement should continue for six months, it would be presumed to be permanent. It was held in that case that plaintiff was entitled to payment for total disability, although he recovered after the expiration of the six months' period. Of course, there is nothing in the language in the policy now under discussion similar to that in the Jones case.

Defendant contends that when it was shown at the trial that insured had fully recovered, it was impossible for plaintiff to have shown a permanent disability of indefinite duration, or of any other nature; that on the 15th day of June, 1930, "his disability had been terminated and its duration was definitely and positively known."

I am of the opinion that the fact that it was established at the trial

that insured had fully recovered is not, as a matter of law, a complete defense to this case. While the agreed statement of facts shows that he had recovered on June 15, 1930, which was some eighteen months after his disability stated, and his recovery establishes the fact that his disability at no time was real or absolute as to permanency, from what I have said it was not necessary for plaintiff to show, with absolute certainty, that his disability was permanent, but only that it appeared to be so with reasonable certainty. In other words this insurance is payable upon appearances of reality rather than upon actuality.

As before stated, defendant could have written the policy so as to provide that if it should appear, with reasonable certainty, that the insured had received a permanent total disability, it would pay the amount of the policy at once, without requiring that the disability run for any length of time whatever. But as long as defendant desired to test the character of the disability, as to its permanency, by the expiration of time, there must have been a time fixed short of death wherein it would have been possible and feasible for the insured to establish the reasonable certainty of the permanency of his disability, unless the company desired the policy to provide for payment for a permanent disability of an absolute, definite or certain character. I think that, undoubtedly, this policy fixes that time to be at the end of six months of total disability. In other words, defendant agreed to settle upon the appearance of things at the end of that time, but did not agree that it would have a right to wait a year, a month, a week or even a day, after that time, in order to establish, by the lapse of time, the quality of the disability. Some certain time for the settling of this matter, of necessity, must have been made. Otherwise, defendant would have had as much right to wait until death ensued as it would a year or any period of time longer than the expiration of the six months' period. To construe the policy to mean that the quality of the disability should be established as late as the time of the trial of a law suit arising out of it, would not only be contrary to the provisions of the policy, but would encourage insurance companies to refuse to pay for these disabilities, putting off the insured after the expiration of the six months' period, possibly for years or until insured is required to bring suit to establish his right to payment, for, by that time disability, although it appeared with reasonable certainty to have been permanent at the end of six months, might prove to be otherwise by the lapse of time. Thus the insured would be deprived of what he expected to get, and what his dire needs, in most cases, required, for a period of months or years, and possibly forever. I cannot so construe the law as applied to the terms of a policy such as we have before us.

However, I do not mean to say that the company could not, in good faith, contest the question as to the permanency of the disability as

it appeared to exist at the end of the six months' period, and should it be convinced in good faith, on a full and fair investigation of the facts at the end of that period, that the insured is not permanently disabled, within the meaning of the policy, it would have a right to contest the matter, even to the extent of requiring insured to file suit. Nor do I believe that it would be incompetent, under such circumstances, for the insurance company to show at the trial that insured had fully recovered from his disability. This would not be for the purpose of establishing that insured was not actually permanently disabled at the end of the six months' period, but for the purpose of showing that it did not appear at the end of that period that he was so disabled. I know of no more potent evidence upon that question than proof that insured had fully recovered after the expiration of that period. In fact the distinction that I am attempting to make between the appearance of things and reality (the recovery in this case) may be more technical than practical, for the reason that I apprehend that it would be difficult, if not impossible, to procure a medical witness who would testify at a time when insured was wholly recovered that any prior time thereto insured appeared, with reasonable certainty, to have suffered a permanent disability. Even if a physician would so testify or if plaintiff thought it was a case where no medical testimony was necessary, it would be difficult to imagine a case where a jury or the court, sitting as a jury, would find that at the end of the six months' period, insured appeared, with reasonable certainty, to have suffered a disability that would last throughout life, when at the time of the trial he had fully recovered.

However, these matters are more or less aside the real issue, for the reason that the agreed statement of facts does not disclose that, at the end of the six months' period, plaintiff's disability was such that it would reasonably last throughout life. The only matter in the agreed statement of facts bearing upon this question is that, at the expiration of the six months' period, the disability "was of such character that the physicians in charge were unable to determine how long the disability would continue." In other words, as contended by plaintiff, himself, the doctors were of the opinion that the disability would be of indefinite duration. From what I have said this was insufficient.

I have examined the cases cited by plaintiff upon this question that find them not in point. None of them involve insurance cases except, Ginell v. Prud. Ins. Co., 237 N. Y. 554, which does not support plaintiff's contention. Plaintiff evidently overlooks the fact that the Court of Appeals of New York in that case overruled the Appellate Division of the Supreme Court in the same case, adopting the dissenting opinion of Judge VAN KIRK. [See Ginell v. Prud. Ins. Co., 200 N. Y. Supp. 261, 262.] In the case of Texas Ry. Co. v. Marshall, 136 U. S. 393, cited by the plaintiff on this point, it was held that

where a city made a large donation of bonds and other properties to a railroad, upon the condition that it "permanently establish its eastern terminus" at such city, that the use of the "permanently" did not mean that it should ever remain there, but that the railroad should establish its terminus there in the ordinary course of business with the understanding that it should be permanent. The case of Haskell v. Madison University, 8 Barb. 185, is similar to the Marshall case. A man may have a permanent residence but this does not mean that he must continue to live there during his lifetime, but the word "permanent" in that sense is used merely to distinguish the class of residence from that of a transient. [Austen v. Grilby, 42 N. Y. Supp. 1097.] In Lord v. Goldberg, 81 Cal. 596, the words "permanent employment" was said to mean employment for an indefinite time, as it may be severed by either party. Soule v. Soule, 87 Pac. 205, 208, discusses permanent and temporary alimony. The word permanent in reference to alimony does not necessarily mean lasting forever but distinguishes such alimony from temporary alimony.

In the case of Texas Ry. Co. v. Marshall, supra, cited by plaintiff, it was held that the meaning of the word "permanent" is to be construed according to its nature and in relation to the subject-matter of the contract. As before stated, there is much in the policy in the case at bar to give character to the word permanent as used in the policy.

"In *insurance parlance* the phrase 'totally and permanently disabled' contemplates a physical condition at the time of the claim which reasonably convinces the judging authorities that (a) the subject is then totally disabled, and (b) will so remain for life." [Met. Life Insurance Ins. Co. v. Noe, supra, 1. c. 690.] (Italics ours.)

Being of the opinion that the plaintiff failed to show that at the end of the six months' period in question he had suffered a permanent disability, that is, one that would be reasonably certain to continue during life, he was not entitled to recover and the judgment should be affirmed. It is so ordered. *Trimble, P. J.,* concurs in a separate opinion; *Arnold, J.,* dissents.

## SEPARATE CONCURRING OPINION.

TRIMBLE, P. J.—I concur in the result reached by Judge BLAND, namely, that the judgment of the trial court be affirmed.

The clause in the policy containing the conditions on which insurance was to be paid is as follows:

"If the Employee (the insured) shall furnish the Company with *Due proof* that—

"Before having attained the age of sixty years, he or she has become *totally and permanently disabled* by bodily injury or disease, *and* that—

"He or she is *then,* and will be *at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and* that—

"He or she *has been so permanently and totally disabled* for a period of six months—

"The Company will *immediately* pay to the Employee in *full settlement* of all obligations hereunder, the *amount of insurance in force,* hereunder, at the time of the *approval* by the Company of the *proofs* as aforesaid."

The clause further provides that "this amount will be paid either in one sum or installments," but as insured elected to take it in one sum this part of the clause is not important.

Many authorities are cited on both sides as bearing on the controversy in this case. I have endeavored to carefully examine them, and find that not only the peculiar clause in this policy, but also the circumstances of the case, are *different* from those of the cited cases. For instance, in many of said cases the clause contains words or statements, in connection with the promise of the company to pay, upon the required proof being furnished, which clearly or by proper construction, evince an intention to pay even though it may *afterward* turn out that the disability ceased to exist. Some of them are so worded as to show, or be open to the construction, that the company will pay in installments *so long* as the disability continues, but when that ceases then the relation of insurer and insured again arises and the insured must again commence the payment of premiums. Of course, such cases are not strictly in point here for the reason that there are no such *additional* clauses or statements evincing or importing such an intention. Again, of the cases cited in the briefs on both sides, only *one* is where the insured had recovered before suit was brought, and in that case, the judgment was for the *defendant.* In the case now before us, the insured is shown and *found* by the court to have *recovered before* the bringing of the suit.

Unquestionably it seems to me, the policy herein is insuring against a *permanent and total* disability and not a *temporary* one. This does not mean, however, that before plaintiff can obtain judgment he must prove absolutely that the disability will last throughout life; all that he is required to do is to furnish proof that, while under sixty, he received a bodily injury which so totally and permanently disabled him that he was *then,* and will be *at all times thereafter,* wholly prevented thereby from engaging in any gainful occupation, *and* that he has been so permanently and totally disabled *for a period of six months.* The policy clearly does not say that if he is totally disabled so that he is wholly prevented thereby from engaging in any gainful occupation, and remains so for six months, then the company will pay; but, *in addition to the above,* the due proof must show that he will thereby be so wholly prevented, *at all times thereafter.* The proof of this last does not require *absolute* proof that he

will always continue to be disabled; but if it is shown that very likely, or in all human probability, so far as things look now, he will remain wholly disabled, he will have furnished the "due proof" mentioned in the clause. In other words, he will have established, prima facie at least, that *in all human probability* his disability is "total and permanent" and that would be *all he could do* and all that the *law requires him to do,* and that is the reason he must have proof from the physicians that his disability will likely continue, so far as can be determined at the time. In other words, the "due proof" must show that his disability had not only existed for six months but would likely *continue indefinitely* and was, therefore, *not merely temporary.* But in the situation of *this* case there is not only *no* such proof, but the insured, like the cured man in the New Testament, is in court sitting "clothed and in his right mind," a living and conclusive proof that his disability has been merely temporary and is not permanent either in the *legal* or any other sense.

In passing on cases wherein the terms "permanent disability" are construed to mean, in insurance contracts, something other than what is ordinarily meant by those terms in lay usage, the reasons and the principles governing such judgments are oftentimes not set forth, the rule is merely stated and the law applied.

But if I understand the principles underlying the rule, they are, not so much that "permanent" does not mean what it is ordinarily understood to mean, but that the difference arises out of the practical considerations involved. It is well recognized that an insurer will not be allowed to enforce the terms of his contract so as to allow it to *promise* insurance on the face of it and then have clauses therein which *deny* that insurance. The contract will be construed so as to effectuate rather than destroy the purpose the parties had in entering into the contract. No, to insure a man against total and permanent disability so as to render him wholly unable to engage in a gainful occupation, and, when disability arises, require him to *conclusively,* or even tentatively, show the disability to be lifelong, is to allow the insurer to take back with one hand what had been offered the man with the other, and which the man had well paid for. For the only way in which the insured could *conclusively* show that his disability is permanent in the ordinary sense would be to postpone effort to collect insurance until the end of his life, and then it would do him no good, and that too in a kind of insurance that is for *his* benefit and not for any heirs or other beneficiary. Hence, the purpose of the contract being to *effectuate* insurance, the terms of the contract will not be construed so as to peremptorily and unconditionally *deny* it. Consequently, "permanent" will not be given the meaning of "everlasting" but only that the condition to which it is applied is *very likely* to continue indefinitely and is *not temporary.* And to require only such proof as will show it to be of the former character

is what is, meant, when it is said, as in 32 C. J., sec. (17) 13, p. 519, "A permanent injury as distinguished from a temporary or continuing injury, is one of such character, and existing *under such circumstances,* that it would be presumed to continue *indefinitely.''* (Italics mine.)

But how can it, or the condition produced thereby, be presumed to continue indefinitely, when there, before the court, stands the man in full health and vigor and with complete ability to work, showing that it has *not* continued and will not continue indefinitely, but has come to an end before the suit was brought?

To hold that plaintiff, in such circumstances, is entitled to recover is to ignore entirely the clause requiring that the insured shall furnish the company with "due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, *and* that he or she is *then,* and will be *at all times thereafter,* wholly prevented thereby from engaging in any gainful occupation."

The provision that he or she must be in that condition for a period of six months is to have that condition exist for that length of time as one of the proofs or likelihood that it will continue, and also, perhaps, to afford the company that length of time in which to investigate for themselves what his condition is. The evidence, or the agreed statement of facts, does not show that the defendant induced insured to *postpone* suit after the six months was up, and if at that time he had brought suit, and his proof had shown all the other facts and had shown that, very likely, or so far as could be then seen, his disability would remain, then he would have been entitled to judgment, even though *afterwards,* time disclosed that he, in fact, would and did fully regain his health. I do not think that in this suit, not brought until after he had regained his health, he is entitled to recover judgment even if his physicians, or the agreed statement of facts, had shown that at the end of the six months his disability appeared likely to, or in all human probability would be, permanent, or continue indefinitely. Apparently, defendant's refusal to pay after the expiration of the six months was because it did not think his injury was of the character claimed, and it would seem that this opinion was well founded, since insured's physicians did not say they *thought his disability would very likely continue* indefinitely, but merely that they *did not know* how long it would continue. This is a negative instead of a positive statement. In addition to all this, *time* seems to have also justified defendant's idea that the injury was not permanent because plaintiff is now well.

The purpose of showing by physicians that his disability will likely continue, is rendered necessary if insured at time of trial is still disabled, but what purpose can such proof accomplish, and why was it necessary to *plead* such fact (or attempt to plead it), if, notwith-

standing plaintiff's return to health prior to the suit, he is entitled to recover the *full amount* of the insurance? To so hold, is to tear the contract to pieces and revamp it so as to make it read "if before having attained the age of sixty years, he has become totally and permanently disabled by bodily injury or disease so as to be wholly prevented from engaging in any gainful occupation and continues thus for a period of six months, then the company will pay the full amount of insurance." We are without power to make even contracts of insurance for the parties. Neither can we construe them in direct contravention of the plain meaning of its terms, so as to enable an insured to obtain a judgment under or by means of such construction.

I concur in the result of the opinion ordering an affirmance of the judgment.