Arthur B. Plummer, by Guardian

*vs.*

Metropolitan Life Insurance Company.

Somerset.     Opinion, December 1, 1933.

*Merrill & Merrill,* for plaintiff.
*F. Harold Dubord,* for defendant.

SITTING : PATTANGALL, C.J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. The Metropolitan Life Insurance Company of New York, on January 12, 1920, insured the life of Arthur B. Plummer of Skowhegan, and included as a part of the policy a Total and Permanent Disability Provision in which it agreed that if, before default of the payment of any premium and before the insured attained the age of sixty years, the Company received due proof that, as the result of injury or disease occurring or originating after the issuance of the policy, he had become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the Company, commencing with the anniversary of the policy next following the receipt of such proof, would waive payment of each premium coming due during such disability, and in addition, com-

mencing six months from the receipt of such proof, would, during the continuance of such disability, pay him a monthly annuity of $10.00 for each $1,000.00 of the original insurance. It was further provided, however, that, notwithstanding proof of such disability may have been accepted by the Company as satisfactory, the insured should, on demand but not oftener than once a year, furnish due proof of the continuance of his disability and, failing so to do, or if he should be able to perform any work or engage in any business whatsoever for compensation or profit, no further premiums would be waived or further monthly annuity payments made.

On February 26, 1929, Mr. Plummer's married sister, Helen Derbyshire, upon her petition alleging that her brother was of unsound mind, was appointed his Guardian by the Judge of the Probate Court of Somerset County and within a few weeks, the exact date not appearing in the evidence, applied to the Insurance Company for the benefits payable to him under the Disability Provision of his policy, representing that, through mental incapacity, he had become permanently and totally disabled. The claim having been allowed, the Insurance Company returned the last premium it had received and paid monthly annuities from September 2, 1929, until and including January 2, 1932, when it stopped payments and denied liability. On June 12, 1932, when the next premium fell due, it was paid under protest, and within two months this suit was brought to recover the amount of that premium and annuity payments for the seven months next preceding. The defendant Company pleaded the general issue and, having by brief statement set up the defense that the insured was not totally and permanently disabled within the terms of his policy, by stipulation of counsel the case was submitted to the jury on that issue of fact alone, with instructions that, if the plaintiff was entitled to recover, damages in the sum of $1,005.10 should be assessed. The case comes to this Court, after verdict for the plaintiff, on the defendant's motion for a new trial and exceptions to the rulings of the presiding Justice on the admissibility of evidence.

*MOTION*

A careful and thorough examination of the voluminous transcript which is brought forward on this review discloses credible

and substantial evidence from which the jury were warranted in finding that in 1926 the plaintiff suffered a mental breakdown which has permanently incapacitated him from performing any work or engaging in any business for compensation or profit. He has lost practically all his business acumen and judgment, becomes easily excited and extremely nervous and then is moody and depressed. He has aged in appearance and his physical capacity is greatly reduced. Until 1928, he remained in the employ of a local automobile agency, but at that time was discharged for inattention to and inefficiency in his work. He then retired to a small farm which he owned in New Portland, near Skowhegan, and has since lived there practically in seclusion. For several years, he has been supported by his guardian, and we find no convincing evidence that he has earned any substantial amount of money during this period.

Several physicians gave their opinions on the stand as to Mr. Plummer's mental condition and its causes, effect and duration. His family physician, who had known him for years and examined him repeatedly, was of the opinion that he was mentally deranged and the condition was permanent. He attributed Mr. Plummer's breakdown to a mental shock received when his first wife died in 1926, and he had observed no improvement in his condition. The Superintendent of the Maine State Hospital for the insane, who had Mr. Plummer under observation for several weeks, at first found his symptoms suggestive of general paralysis, but came to believe that he was suffering from a "manic-depressive depression associated with an ordinary amount of arteriosclerosis and an abnormally high diastolic blood pressure." There is evidence that the Superintendent later advised the family that Mr. Plummer had an organic brain disease, then dormant but of a type which warranted precautions against allowing him to become excited for fear of violence. On the stand, having made an examination of Mr. Plummer just before the trial, the Superintendent gave as his opinion that he was then "suffering from remote effects of manic-depressive disorder" and, though he said he did not know whether the condition was permanent or not, and thought the patient had ability and some capacity to work, admitted that "it is difficult for a patient in such a condition as that to work."

It is true, as pointed out by counsel for the defendant, that the record shows that at the time of or soon after his breakdown Mr. Plummer, formerly a temperate man, began to drink more or less liquor, became enamored of a married woman, installed her as his housekeeper at his farm, and married her when she obtained a divorce. He drove his own automobile until 1932 when he turned its operation over to his wife. He worked several weeks in a garage and has performed some labor on or about his farm, such as helping plant and hoe the garden, assisting in building a dam across a small brook, rowing a boat for some hours on a nearby pond, helping string a wire fence, and taking some part of the care of his cattle and hens.

Upon the facts just stated, the Insurance Company contends that it is established that the plaintiff lost his position with the automobile agency and has since been out of employment and business solely because of his own bad habits and the general business depression of the last few years. We are not convinced that this is so. There is abundant and convincing evidence in this record that the plaintiff became mentally deranged as a result of the death of his first wife, and that his subsequent condition of incompetency and incapacity is the direct result of the shock he received at that time. It may be that his dissipation since his breakdown has prolonged and increased his disability, and it would not be strange if, having a "manic-depressive disorder," he has become more depressed by current conditions and doubts as to the future. His marriage was against the advice and protest of his friends and family, and furnishes no proof of soundness of mind or body, and little significance, if any, can be attached to his operation of his automobile. It appears that his employment at the garage was arranged by his family and physician in the hope that regular work would improve his mental and physical condition, but he was found to be inefficient and irresponsible and was soon discharged. And his work about his farm, when viewed in the light of testimony that in whatever he did he was unable to accomplish any more in a day than an ordinary man would in a few hours, was unable to finish what he began, and became easily confused in simple business matters, we think, falls short of proving that he could either oper-

ate his farm or engage in any other business with an expectation of profit, or obtain employment in any kind of work for which he was adapted or, if so employed, perform the work in a sufficiently workmanlike manner to warrant retaining him and paying him wages.

Upon the issue joined, the burden was upon the plaintiff to prove that at the time his claim of disability was filed he had become totally disabled as the result of disease, so as to be unable to perform any work or engage in any business for compensation or profit, and when the premium and Monthly Annuities here in suit accrued that he had not recovered within the meaning of the disability clause of his policy. It was not necessary for him to show that he had been reduced to and remained in a state of absolute helplessness, but it was sufficient if the evidence established that he was unable to perform the work in any occupation he was adapted to in the customary manner of a workman in that occupation working for compensation, and that he was unable to do all of the substantial and material acts necessary to the prosecution in the customary and usual manner, and for compensation or profit, of any kind of business for which he was adapted. This definition of "totally disabled" is in accord with the great weight of authority regardless of whether the policy is for accident insurance or for life insurance with a disability clause attached. In principle, if not in exact phraseology, it is approved in 14 R. C. L., 1315, and the Notes and cases cited in 24 A. L. R., 203; 37 A. L. R., 151; 41 A. L. R., 1376; 51 A. L. R., 1048; and 79 A. L. R., 857. It was applied to the disability of an insured to engage in business in *Young* v. *Insurance Company*, 80 Me., 244, 13 A., 896.

According to the terms of his policy, the plaintiff was also bound to prove he was permanently disabled and had not recovered. A reading of the contract, however, leaves no doubt that the term "permanent" disability, as there used, was not intended to limit liability to proof of a disability which must of necessity last for the remainder of his natural life without any hope or possibility of recovery before death. The Company in the last paragraph of its Disability Provision, having already agreed to pay monthly annuities and waive premiums upon receipt of proof of permanent disability, there expressly provided that, notwithstanding proof of

disability may have been accepted by the Company as satisfactory, if the insured failed to furnish due proof of the continuance of his disability or became "able to perform any work or engage in any business whatsoever for compensation or profit," the payments of annuities and waiver of premiums should end. This is a recognition of the possibility that the insured might recover from the disability insured against, and is sound warrant for the conclusion that, in the contemplation of the parties, a total disability, enduring and continued and not merely temporary or transient, was "permanent," and their contract must be construed accordingly. Proof of total disability of this degree of permanency was sufficient.

Applying the law of the case as stated to the facts in evidence, the verdict must stand. The jury were clearly warranted in finding that, as a result of mental disease, the plaintiff was totally and permanently disabled within the meaning of his policy of insurance and entitled to recover as claimed in his writ, subject only to the stipulations of counsel as to damages. On this record, the verdict in the trial court was just and proper.

## EXCEPTIONS

When mental condition is the issue to be decided, the evidence, of necessity, must include a wide field of fact and circumstance, and greater latitude in the admission of testimony must be given than would be permitted in relation to a single fact. And "to enable the jury to determine the real state of mind, the action of that mind as shown by conversations, declarations, claims, and acts is the most satisfactory evidence." *Robinson* v. *Adams*, 62 Me., 369. So too, although witnesses other than experts are not allowed to testify directly as to their opinion of the mental condition of another when that question is the issue to be decided, "under the direction of the court, (they) may be permitted to describe peculiarities, conditions and situations, conduct and changes." *Fayette* v. *Chesterville*, 77 Me., 28; *Robinson* v. *Adams*, supra. With one exception, the errors alleged in the Bill of Exceptions relate to the admission of evidence bearing on the plaintiff's mental condition and are within the foregoing rules.

The plaintiff's family physician, having testified that the in-

sured was disabled during the three years prior to August 1, 1932, was asked, "What was he unable to do" during that period and replied, "He was unable to carry on ordinary work." A general objection to the question and answer was noted and an exception reserved. The defendant argues that as to the interrogatory the issue was solely whether or not the insured was totally and permanently disabled during the period covered by the accrual dates of the annuities and the premium sued for, and therefore evidence as to his prior condition is immaterial. That position is untenable. In order to recover under his policy, the burden was on the plaintiff to prove that before the annuities and the premium had accrued, he had become totally and permanently disabled, had furnished due proof thereof to the Company, and had not since recovered. These were the issues which the defendant framed in its pleadings and the plaintiff was bound to meet. The inquiry before the jury involved the full period of the plaintiff's disability. The defendant's contention made here that the physician's answer was a mere opinion and not responsive is not open on this exception. Objection to the answer on these grounds should have been by a motion to strike it out. Were the rule otherwise, the result would be the same. There is nothing in the answer which furnishes ground for a new trial.

*Motion overruled.*
*Exceptions overruled.*