[No. 25875. Department One. December 9, 1935.]

LEWIS W. RICHARDS, *Respondent,* v. METROPOLITAN LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 55 P. (2d) 1067.

*Preston, Thorgrimson & Turner,* for appellant.

*Mifflin & Mifflin* and *George F. Hannan,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover the disability benefits provided for in a life insurance policy issued to him by the defendant. Trial by jury resulted in a verdict for plaintiff, and from the judgment entered thereon defendant has appealed.

The policy, which is in the face amount of two thousand dollars, was issued on June 16, 1925. Attached thereto and made a part thereof was a supplementary agreement, which, so far as it is material here, reads as follows:

"METROPOLITAN LIFE INSURANCE COMPANY

"IN CONSIDERATION of the application for this Contract, as contained in the application for said Policy, the latter being the basis for the issuance hereof, and in consideration of ONE dollars and NINETY-TWO cents, payable ANNUAL...... as an additional premium herefor, such payment being simultaneous with, and under the same conditions as, the regular premium under the said Policy, except as hereinafter provided,

"HEREBY AGREES, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said Policy and this Supplementary Contract are in full force and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the insured, *become totally and permanently disabled,* as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, *and that such disability has already continued uninterruptedly for a*

*period of at least three months,* it will, during the continuance of such disability,

"1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and,

"2. Pay to the insured, or a person designated by him for the purpose, . . . a monthly income of $10 for each $1,000 of insurance . . .

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract." (Italics ours.)

The question to be determined in this case is whether, under the particular facts and circumstances as hereinafter set forth, the respondent was *totally and permanently* injured, within the meaning of the provisions of the supplementary agreement.

At the time of the issuance of the policy in 1925, respondent was nineteen years of age. In his application for insurance, he gave his occupation as that of a student and a salesman of gasoline and oil. In 1927, he entered upon a four-year course of study in a college of osteopathy in Kirksville, Missouri.

Shortly after his graduation in May, 1931, he and his wife departed from Kirksville by automobile, intending to go to Seattle, where respondent was to commence the practice of his chosen profession. The journey was interrupted, however, at Billings, Montana, by the occurrence of an automobile collision, as the result

of which respondent sustained serious injuries to his skull, ribs, and back. For two weeks, he lay in a hospital in Billings and was then brought to Seattle, where he remained until July 20, under the care and treatment of Dr. Ford, an osteopathic physician. During the first four months of his illness, respondent was afflicted with diplopia, or double vision, and for a long time was also troubled with aphasia, or interference with the power of articulation. From July to September, 1931, he was in a hospital in Kirksville, receiving treatment.

At the time of his graduation, respondent had been offered a position as assistant to Dr. Ralph Smith, an osteopath, at Rawlings, Wyoming. The position being still open, respondent, accompanied by his wife, went to Rawlings in September, 1931, and established the connection offered him. Owing to his physical condition, however, he was unable to do the manipulative work required of an osteopath in treating his patients. He was, therefore, compelled to confine himself to laboratory work and urinal cases.

Being unable to comply with Dr. Smith's requirements, respondent left Rawlings November 25, 1931, and went to Baggs, Wyoming, a town of not over two hundred people; there, he set up an office for himself. Being unable to give manipulative treatments, he limited himself to diagnosis and prescriptive work, for which he received compensation, though mostly in produce and other articles of trade. He remained in Baggs until May, 1932, a period of about six months. He then returned to Kirksville, Missouri, where, during a period of two months, he received further treatment for his back.

In July, 1932, respondent went to Seattle and a little later established an office connection with Dr. Ford, who, as already stated, had been his attending phy-

sician. Respondent, however, was still unable to do manipulative work and, therefore, confined himself to laboratory cases. In the meantime, he continued receiving treatments from Dr. Ford. This arrangement lasted until November, at which time he left Seattle and went to Ravensdale, where, until the following February, he spent most of the time in bed.

In February, 1933, respondent made application for relief from the county. He was given clerical work to do at one of the relief stations, where he worked from four to six hours a day and from three to five days a week, writing vouchers and handling checks. For this work, he was paid thirty dollars per month. That arrangement continued until May 10, 1934, and during that time respondent was gradually improving. He then went to Alaska, where he took up a position as medical aid man for a company at a salary of one hundred twenty-five dollars a month and board. That position he held until the early part of October, 1934. He then returned to Seattle, where he opened an office in the practice of his profession, and was still maintaining his office, doing regular manipulative work, at the time of the trial. He still suffers pain and discomfort, however, from his injuries.

While in Rawlings, or else at Baggs, Wyoming, respondent sent a letter to the office of the appellant company at Moberly, Missouri, sometime about the first of January, 1932, in which letter, according to his testimony, he advised the company of the accident which had occurred the previous May, advised it that he was totally and permanently disabled, and requested that the company either pay him the disability benefits provided in the policy or else make him a loan. The letter is not in the record, and its contents are in dispute; but, at any rate, the fact is that the company

did make him a loan of $269.50 on the policy, which at that time was still in full force and effect.

It further appears from the record that, about the same time, respondent made application to Northern Life Insurance Company for reinstatement of a policy issued to him by that company and which had lapsed for nonpayment of premium. In that application and in the letter preceding it, respondent stated that he had been enjoying a comfortable practice for the past six months, that he was in sound health, and that, although he had been in an automobile accident in which he had sustained three broken ribs, he had no permanent injuries. That policy, it appears, was thereupon reinstated.

The premium which fell due on June 16, 1932, on respondent's policy issued by appellant, was not paid, and the policy therefore lapsed. In October, 1932, respondent consulted an attorney, and a letter was then written to the appellant, advising it of the accident in May, 1931, and stating that, since that time, respondent had been *totally* disabled and was making claim for the benefits accruing to him under the policy. Request was made in the letter that forms be sent for making the necessary proof. No answer to the letter having been received, this action was instituted in January, 1933. In his complaint, respondent alleged that he was then, and ever since May 30, 1931, had been, totally and *permanently* disabled.

Upon the trial, the respondent testified that he was not claiming anything beyond May 23, 1934, which was the date of his taking employment in Alaska. He further testified that he was then only *partially* disabled. His medical witnesses, also, testified that his disability was not then total or permanent. The jury returned a verdict for respondent in the sum of

$740.12, designating therein that it was for thirty-four months *total disability.*

Upon this statement of the facts, we come to the question of the liability of the appellant under the terms of the policy. It will be assumed that, under the rule laid down in the case of *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 275 Pac. 550, respondent was totally disabled for a considerable portion of the period between May 30, 1931, and May 10, 1934. It will also be assumed that, since the latter date, respondent has been *permanently partially* disabled.

 The policy, however, is not a health or accident policy, but is a life insurance policy with provisions for disability benefits. Nor, as such, does it provide for *temporary total disability* or for *permanent partial disability.* It provides only for *permanent total disability.* The annual premium on the policy, without the disability feature, was fifty-five dollars. For an additional premium of $1.92, payable annually, the company agreed that, upon receipt of due proof that the insured had become *totally and permanently* disabled, and that *such* disability had then already continued uninterruptedly for a period of at least three months, the company would waive the payment of further premiums and would pay the insured a monthly income, with the added provision that, notwithstanding that proof of disability may have been theretofore accepted by the company as satisfactory, the insured would at any time, upon demand from the company, furnish due proof of the continuance of such disability.

A policy of insurance is a contract, and its language, like that of any other contract, must be given its usual and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result.

So far as this action is concerned, the vital word in the policy is "permanent." That word is not a technical one, but a common, ordinary word with a well-recognized meaning, even to the lay mind. Webster's New International Dictionary (2nd ed.) defines it as follows:

"Continuing or enduring in the same state, status, place, or the like, without fundamental or marked change; not subject to fluctuation or alteration; fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient."

Funk & Wagnalls New Standard Dictionary (1929) defines it thus:

"Continuing or intended to continue in the same state, or without change destructive of the essential form or nature; durable; opposed to temporary."

The words "permanent" and "temporary" are antonyms of each other and readily occur to the ordinary mind as such. A disability that is transient or temporary cannot be a permanent one. It is reasonable and proper to say that one has been "totally disabled" for a definite period of time, but it would do violence to the language, and would be utterly contradictory, to speak of a "permanent disability" as being for a *limited* period. To give the word "permanent" the meaning of "temporary," would be to delete the word "permanent" from the contract entirely.

The concluding words of that paragraph in the supplemental agreement in which the word "permanently" is used contain a further restriction or condition. They provide that *such* disability, referring to permanent disability, must already have continued uninterruptedly for a period of at least three months before the company shall be called upon to waive further

payment of premium or to pay the monthly income. A testing or waiting period, sometimes designated as a moratorium, is thus prescribed, during which the company is relieved of the necessity of investigating premature or immature claims. While this period, whatever it may be, must of necessity be arbitrarily fixed, its duration is determined and accepted by and between the parties as being of sufficient length to permit a fair and reasonable prognosis to be made as to the permanency of the disability.

Whether the injury or disease is transient and temporary or whether it is permanent and lasting, must often be a matter of opinion, dependent upon the situation as presented by the circumstances at a fixed and given time. Being a matter of opinion, it becomes a matter of proof. While often it cannot be presaged with absolute certainty how long some particular disability will continue, yet the lapse of time, the manifestation of definite symptoms, and the observation of pathological conditions, furnish standards, based upon experience, sufficient to pronounce a judgment. Even then, the judgment exercised may not be infallible, but it is the best that can be had under the circumstances. If, at the end of the waiting period, it appears with reasonable certainty that the insured is permanently disabled, he is then entitled to payment of the installments provided in the contract.

Even then, however, it may sometimes be later found that the earlier prognosis or conclusion was erroneous in fact. People have been known to recover from ailments that were considered incurable, and injuries that were thought to be totally and permanently disabling have proven otherwise. The healing processes of nature and the dispensations of

Providence are often a surprise. To cover that very contingency, many policies of insurance contain, as does the present policy, a clause providing for further proof, at intervals, of the continuance of the disability and for the cessation of further payments if changed conditions warrant and justify it.

Again, there may be differences of opinion on the part of both expert and lay observers as to the probabilities of the continuance and the effect of a particular disease or disability. The parties may not agree. Hence, where assertion and investigation result in conflicting positions, or where the proof is divergent, there must be some arbiter or tribunal with power to set the matter at rest between the parties for the time being. This, necessarily, must be a court of competent jurisdiction with its component parts. The case is therefore presented to the court for its consideration, and the matter is determined in the light of all the facts as they are then presented to the court. If it then appears and is determined, either demonstratively or by proof to a reasonable certainty, that the insured is permanently disabled, he is entitled to payment of the installments as of the time provided in the contract. But if it does not then so appear, or cannot be so determined, the insured is not entitled to such payment.

Although policies of insurance containing provisions identical with, or similar to, those in the policy now under consideration have long been in use, it does not appear that this court has ever before been called upon to construe the meaning of these particular provisions taken as a whole. It does appear, however, from the many cases cited to us, that the same, or similar, provisions have been a frequent subject of construction in other jurisdictions, since about 1923.

Without analyzing those cases, we cite them as authority for the views that we have already expressed:

*Ginell v. Prudential Ins. Co.*, 237 N. Y. 554, 143 N. E. 740 (reversing and adopting the dissenting opinion in 205 App. Div. 494, 200 N. Y. Supp. 261); *Shipp v. Metropolitan Life Ins. Co.*, 146 Miss. 18, 111 So. 453; *Leduc v. Metropolitan Life Ins. Co.*, 65 Quebec Sup. Ct. 320; *Hawkins v. Hancock Mutual Life Ins. Co.*, 205 Iowa 760, 218 N. W. 313; *Conley v. Pacific Mutual Life Ins. Co.*, 8 Tenn. App. 405; *Home Benefit Ass'n v. Brown*, 16 S. W. (2d) (Tex. Civ. App.) 834; *Metropolitan Life Ins. Co. v. Noe*, 161 Tenn. 335, 31 S. W. (2d) 689; *Brod v. Detroit Life Ins. Co.*, 253 Mich. 545, 235 N. W. 248; *Metropolitan Life Ins. Co. v. Blue*, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; *Maresh v. Peoria Life Ins. Co.*, 133 Kan. 191, 299 Pac. 934; *MacKenzie v. Equitable Life Assurance Soc.*, 140 Misc. 655, 251 N. Y. Supp. 528; *Lewis v. Metropolitan Life Ins. Co.*, 142 So. (La. App.) 262; *Paul v. Missouri State Life Ins. Co.*, 228 Mo. App. 124, 52 S. W. (2d) 437; *Grenon v. Metropolitan Life Ins. Co.*, 52 R. I. 453, 161 Atl. 229; *Job v. Equitable Life Ins. Co.*, 133 Cal. App. 791, 22 P. (2d) 607; *Rose v. New York Life Ins. Co.*, 127 Ohio 265, 187 N. E. 859; *Plummer v. Metropolitan Life Ins. Co.*, 132 Me. 220, 169 Atl. 302; *Mitchell v. Equitable Life Assurance Soc.*, 205 N. C. 721, 172 S. E. 497; *Cassens v. Metropolitan Life Ins. Co.*, 114 Fla. 659, 154 So. 522; *Read v. Equitable Life Ins. Co.*, 206 N. C. 458, 174 S. E. 307; *Lawrence v. Equitable Life Ins. Co.*, 128 Neb. 72, 257 N. W. 530.

It must, in fairness, be said that there are a number of cases from other jurisdictions which take the view that, although the words "permanent" or "permanently and continuously," standing alone, mean that the total disability must be a lasting one, yet when

those words are considered in connection with the other language of the particular policy, they are to be construed as meaning that a disability that has existed continuously for the length of the testing period is a "permanent disability." For reference only, we cite the cases holding that view:

*Penn Mutual Life Ins. Co. v. Milton,* 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382; *Equitable Life Assurance Soc. v. Serio,* 155 Miss. 515, 124 So. 485; *McCutchen v. Pacific Mutual Life Ins. Co.,* 153 S. C. 401, 151 S. E. 67; *Laupheimer v. Massachusetts Mutual Life Ins. Co.,* 224 Mo. App. 1018, 24 S. W. (2d) 1058; *Adamson v. Metropolitan Life Ins. Co.,* 42 Ga. App. 587, 157 S. E. 104; *Losnecki v. Mutual Life Ins. Co.,* 106 Pa. Super. Ct. 259, 161 Atl. 434; *Maze v. Equitable Life Ins. Co.,* 188 Minn. 139, 246 N. W. 737; *Garden v. New England Mutual Life Ins. Co.,* 218 Iowa 1094, 254 N. W. 287.

Many of these latter decisions are criticized in the former cases, on which we have relied as sustaining authority. We need not add, or even suggest, anything by way of criticism of these contrary decisions. We simply say that we do not agree with them, and that, in our opinion, a fair and reasonable construction of the language of such policies compels the conclusion at which we have arrived, and as already expressed.

Applying our view of the law to the facts of this case, it appears that the respondent was, at most, totally disabled for temporary periods and, possibly, partially disabled permanently, but was not *totally and permanently* disabled. As already stated, the jury found that the respondent had been totally disabled over a period of thirty-four months, but the jury did not find, and in the face of respondent's admissions and his evidence could not have found, that he was

*totally and permanently* disabled. Hence, his injuries were not compensable under the terms of the policy.

The judgment is reversed, with direction to the trial court to dismiss the action.

MITCHELL, MAIN, TOLMAN, and GERAGHTY, JJ., concur.

