Abraham H. Ginsburg, Appellee, v. The Prudential Insurance Company of America, Appellant.

Gen. No. 39,689.

Opinion filed March 16, 1938. Rehearing denied April 1, 1938.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

LAVIN & JAFFE, of Chicago, for appellee; GEORGE S. LAVIN and IRA S. KOLB, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This action was commenced on May 8, 1935, for total and permanent disability payments under a life insur-

ance policy issued by the defendant, The Prudential Insurance Company of America, on the life of Abraham H. Ginsburg, plaintiff. A trial was had without a jury, resulting in a judgment on the finding in favor of plaintiff and against the defendant in the sum of $2,018.80, from which defendant brings this appeal.

An amended statement of claim was filed on December 4, 1936, in which the plaintiff alleges the issuance of the policy containing the total and permanent disability "riders" and that the defendant from May 18, 1934 until October 1, 1935, failed and refused to pay under said policy and that the sum of $1,650 has become due under the total and permanent disability provision; that the plaintiff had paid premiums of $127.50 and $241.30 and was entitled to recover these premiums also.

The affidavit of merits filed to the amended statement of claim denied that there was liability for $1,650 and also denied the premium payments were voluntarily made and that the plaintiff was totally and permanently disabled.

Plaintiff's theory of the case is that under the policy, proof of total disability for a period of 90 days raises the presumption of permanency within the meaning of the clause granting disability benefits, and upon receipt of proof thereof the insurer becomes obligated to make payments until the state of continuous total disability shall have terminated; that the total disability for this period confers upon the insured the absolute and indefeasible right to benefit until the period of total disability shall have ended.

Defendant's theory of the case is that the benefits under the total and permanent disability provision of the policy are payable only if the plaintiff is totally and permanently disabled as therein provided and not if the disability is temporary; that there is no ambiguity

in the policy and that the plaintiff is not entitled to recover the premiums paid which are voluntary payments; that it was error for the trial court to permit recovery for any amount alleged to be due after the date the suit was filed.

The evidence shows that the policy in this case was dated July 9, 1930 and was issued to Abraham Ginsburg for the sum of $10,000, payable upon receipt of proof of death; that the policy also contained what is known as "total and permanent disability riders" which provide for payments of $100 monthly and a waiver of premiums if the insured becomes totally and permanently disabled to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime; that if proof submitted shall not be due proof of the permanency of such disability but shall be due proof that total disability as defined exists and has existed continuously during a period of not less than 90 consecutive days immediately preceding receipt of such proof, that such disability shall be presumed to be permanent and the company will grant the said benefits dating from the end of 90 days from the commencement of the period of total disability which has existed continuously to the date of such proof.

The policy further provides that notwithstanding the acceptance by the company of proof of total and permanent disability, or of proof of the duration of total disability for a period of 90 consecutive days, the insured, upon demand by the company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof

that he actually continues in the state of disability defined above and that in case of failure to furnish such proof, no further monthly premiums shall be waived and no further payments made.

The evidence further shows that Abraham Ginsburg became ill on December 1, 1932; that between that date and December 12, 1932, the large toe on his right foot became swollen and on December 13, 1932 an operation was performed; that subsequently, 13 additional operations were performed during the period of 11 weeks when he was in the hospital; that after leaving the hospital his leg was kept bandaged and elevated and he remained at home using a wheel chair until about August, 1933; that he used crutches until January, 1934 and thereafter he used a cane; that during the day he kept his foot elevated about 90 per cent of the time.

The evidence further shows that Ginsburg had been employed by his father in a retail store selling men's furnishings; that at the time of the trial he was working in an office furniture store and managing a men's furnishing store in which he was interested, known as Ginsburg, Incorporated.

The evidence further shows that plaintiff was treated by a Dr. Gaynes from September, 1934 until April, 1935, on an average of three times weekly, during which time the wound remained open and the limb swollen; that in April, 1935, he returned to work for approximately 4 days for a period of from 3 to 4 hours daily; that the wound became larger and the swelling increased and he was taken to the Michael Reese Hospital and two skin graft operations were performed on his right foot and he left the hospital in May or June of 1935; that on September 13, 1935, he saw Dr. Levinthal, at which time the wound was almost closed, although the leg remained swollen; that he started to work on October 1, 1935, for a few hours each day until

January 1, 1936, at which time he commenced to work regularly.

Dr. Daniel H. Levinthal, a witness on behalf of plaintiff, testified that on June 9, 1934, he examined plaintiff and found that he had lymphedema of the lower right extremity due to impaired circulation and multiple scars, particularly on the outer aspect of the dorsum of the right foot; that he prescribed rest and elevation during the greater part of the day, with an occasional lowering of the limb; that he made another examination on October 1, 1934, and found a denuded area on the outer aspect of the dorsum of the right foot and again prescribed elevation of the limb during the greater part of the day; that on April 26, 1935, he performed a pedicle skin graft which required that both of the patient's limbs remain in a cast until May 13, 1935; that he examined the patient on September 13, 1935, and finding the wound healed, referred him back to his attending physician for the healing of the wound did not mean that it was covered with skin.

In answer to a hypothetical question, the doctor testified that the hypothetical man was totally disabled from December 1, 1932 to October 1, 1935, and stated that in his opinion the man was permanently disabled to the time that he returned to work.

Dr. Leonard Gaynes, a witness on behalf of plaintiff, testified that he was Ginsburg's attending physician during his illness and treated him on an average of three times a week from December 1, 1932 to October 1, 1935; that before September 13, 1935, the ulcer was not completely healed and it was not until October 1, 1935, that he became completely healed; that until the second skin graft operation, it was his opinion that there was permanent and total disability and that until October 1, 1935, the patient was totally disabled.

Dr. A. B. King, called as a witness on behalf of defendant, testified that he examined the patient in Octo-

ber, 1934, and found several pinhead size openings in the right foot from which there was a serious discharge; that he decided that the patient was not totally and permanently disabled; that since 1927 he has had about one private patient daily and other than his examinations for insurance companies he has had no experience in orthopedic work.

Dr. F. Patrick Machler, another witness testifying on behalf of defendant, stated that he examined plaintiff on May 18, 1934, and in his opinion the patient was totally and permanently disabled; that on September 28, 1934, he again examined Ginsburg's right foot and was of the opinion that the patient was not totally disabled on that day.

Dr. H. C. Lyman, testifying on behalf of the defendant stated in answer to a hypothetical question that in his opinion he would not consider the hypothetical man totally disabled.

The trial court held that since there was an ambiguity in the provisions of the policy, it should be construed most strictly against the insurance company. The court stated that the term "permanent" in the policy was not to be construed according to the ordinary dictionary meaning, but that the defendant company had undertaken in its own policy to define the meaning of the word; that for the purpose of the policy, total disability which continued for a period of 90 days was considered by the company to be permanent, entitling the insured to the benefits under the policy. The court further pointed out that under the policy it was not necessary for it to determine whether the disability was permanent, but rather whether the disability continued for more than 90 days; that the fact that the company had the right to make periodic examinations to determine if the disability had continued, satisfied the court that the policy did not con-

template the use of the word "permanent" in the ordinary accepted meaning of the word.

At the time of the trial plaintiff was 37 years of age. He was confined in the Michael Reese Hospital on or about May 8, 1935, where he had been operated upon by having skin grafted on his right foot on April 26, 1935. It is agreed that the plaintiff furnished due proof and the defendant made payments to him until May 18, 1934. The fact is not disputed by the defendant in its brief that the plaintiff furnished due proof of disability after May 18, 1934.

Defendant contends that plaintiff was never totally and permanently disabled because he started to work on October 1, 1935, for a few hours each day and resumed his permanent occupation on January 1, 1936, and that therefore he was not disabled on December 23, 1936, the date of the trial.

The policy in question provides as follows:

"*Disability Before Age 60: Waiver of Premiums— Monthly Income to the Insured.*—If the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium, on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any non-forfeiture provision shall become operative, *the Company, upon receipt of due proof of such disability, will grant the benefits hereinafter specified, dating from the commencement of such disability, or if the proof submitted shall not be due proof of the permanency of such disability but shall be due proof that*

total disability as defined exists and has existed continuously during a period of not less than ninety consecutive days immediately preceding receipt of such proof, such disability shall be presumed to be permanent and the Company will grant the said benefits dating from the end of ninety days from the commencement of the period of total disability which has existed continuously to the date of such proof.

"(1) *Waiver of Premiums.*—The Company will waive the payment of any premium or premiums the due date of which, as specified on the first page hereof, shall occur after the disability benefits shall accrue as above specified.

"(2) *Monthly Income to the Insured.*—The Company will, in addition to waiving premiums, pay to the Insured the Monthly Income specified on the first page hereof under the heading 'Total and Permanent Disability Benefits' *beginning from the date when the disability benefits shall accrue as above specified and during the continuance of such disability.* Interest due on any indebtedness under this Policy may be deducted from such monthly income payments. . . .

"*Proof of Continuance of Disability.*—Notwithstanding the acceptance by the Company of proof of total and permanent disability, or of proof of the duration of total disability for a period of ninety consecutive days, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, *for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above.* In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under this Policy shall be continued in force

subject to the payment by the Insured of any premium or premiums, based on such insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter.''

Plaintiff contends that so long as he is totally and permanently disabled, under the terms of the policy, defendant is under an obligation to pay the plaintiff the benefits accruing thereunder.

In *Losnecki v. Mutual Life Ins. Co.*, 106 Pa. Super. Ct. 259, 161 Atl. 434, in discussing what is meant by ''totally and permanently'' disabled, it was said:

''The meaning of the phrase 'totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation,' as used in these policies, is not governed, or, indeed, even helped very much, by reference to dictionary definitions of the word 'permanently,' or its use in workmen's compensation statutes. It is clear from other parts of the policy contracts that the word 'permanently' is not used in its extreme sense of absolute perpetuity, 'everlasting,' 'lifelong,' 'unchangeable,' 'unending,' etc., but rather is used relatively in contradistinction from 'temporary' or 'transient.' This is apparent from the construction placed on the clause in other parts of the policies. For example, the policy provides that although the proof of total and permanent disability may have been accepted by the company as satisfactory, the insured shall on demand, but not oftener than once a year, furnish to the company due proof of the continuance of such disability. . . .'' See also *Plummer v. Metropolitan Life Ins. Co.*, 132 Me. 220, 169 Atl. 302, 305; *Maze v. Equitable Life Ins. Co. of Iowa,* 188 Minn. 139, 246 N. W. 737, 738; *Jefferson Standard Life Ins. Co. v. Hurt,* 254 Ky. 603, 72 S. W. (2d) 20, 24.

In reply to this defendant alleges that the plaintiff was never totally and permanently disabled because plaintiff started to work on October 1, 1935, for a few hours each day and resumed his permanent occupation on January 1, 1936, and that plaintiff was not, therefore, disabled on December 23, 1936, the date of the trial.

In the case of *Maze v. Equitable Life Ins. Co. of Iowa,* 188 Minn. 139, 246 N. W. 737, heretofore cited, the court said: "Subsequent recovery, even before trial, does not destroy the insured's cause of action, though it terminates the accrual of subsequent installment payments thereunder."

We do not believe the interpretation or construction of the words, "permanent or total disability" means that in order to recover the insured must in the first instance prove that forever thereafter he is to be totally and permanently disabled. In our opinion that would be construing the language too narrowly, as we believe it was intended that it should be for the insured's disability so long as that condition existed, leaving it as the policy states to the future to determine whether the disability is permanent or not, the company to gain the benefit in the future, if recovery is had, thereby destroying the presumption of permanency which accrued according to the policy after the period of 90 days.

In the case of *Equitable Life Ins. Co. of Iowa v. Gerwick,* 50 Ohio App. 277, 197 N. E. 923, the court in following the doctrine of the *Maze* case, *supra,* said:

"When Miss Gerwick furnished evidence of her total disability for sixty days and adduced proof raising a reasonable presumption that her disability would continue for an indefinite time, she *then* became entitled to receive her income benefits and waiver of premiums *during the continuance of her disability.*

"The plaintiff in error company cannot evade its contractual obligations by shielding itself behind a fabricated smoke screen of untenable conclusions, based upon ambiguous verbiage, prepared and selected by the company itself. The experts and legal advisers of the plaintiff in error drew these policies with great care and deliberation. The company alone is responsible for the ambiguities and uncertainties therein contained. It would be unjust to allow this insurance company to profit therefrom, at the expense of the policyholder, who had paid out hard earned cash in an honest effort to protect herself and her dependents from unseen contingencies, caused by accident or illness. . . .

" 'To give said terms the strict or literal interpretation stated would be to convict a reputable insurance company of having put out among our people, and having collected from them premiums on, a policy provision which in effect would be scarcely more than a cheat, a pretense, and a fraud.'

"Certainly that could not have been intended."

Defendant contends that this construction ignores the requirement that the insured must be totally and permanently disabled to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime.

We do not think it is necessary to ignore this latter provision, although when considered with the other provisions thereof, a different situation is presented. The provision in the policy to which we refer reads as follows: "The company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no

further premiums shall be waived nor income payments made."

Manifestly, from the language just quoted, the defendant insurance company did not contemplate or intend that the word "permanently" should be construed as meaning "forever." They made provision that they should be advised and could demand due proof as to whether or not the disability was a continuing one and, as before stated, any recovery of the insured inured to its benefit, because if the insured regained sufficiently to engage in any gainful occupation, the insurance company would be relieved of making further benefit payments. No claim is made that they were not advised of plaintiff's condition of health during all that time.

These provisions are rather ambiguous and we are of the opinion the trial court did right in considering them as the law requires—favorably to the insured. The plaintiff is asking to recover only for the time he was disabled, which disability ended October 1, 1935, when he started to work a few hours each day, and at which time it is conceded that he had recovered sufficiently so that his complete disability no longer existed. Although there was a dispute between the doctors as to his disability, we think the evidence clearly shows that plaintiff's disability continued until October 1, 1935.

Plaintiff's exhibit 7, is a letter dated June 1, 1933, from the Prudential Insurance Company of America, written to Mr. A. P. Drapekin in regard to plaintiff. This letter clearly shows that defendant did put the construction upon the policy which plaintiff has heretofore maintained and with which we agree. That letter reads in part as follows:

"In connection with the above numbered policy we enclose herewith check to insured's order for $100.00 in payment of June 1, 1933 disability claim.

"Check is being sent on the understanding that insured is still totally and permanently disabled, and if there has been any change in his condition we should be notified immediately with full particulars."

Defendant's position at this time is inconsistent with the position taken by the defendant when the above letter was written and defendant's construction of the policy at that time. We think the above letter sustains what we have said in construing the terms of the policy.

It is next contended by the defendant that the premium payments made during the period of disability were paid voluntarily and are not recoverable.

On August 4, 1934, the manager of the defendant company wrote the following letter to the plaintiff:

"In connection with above numbered policy, we call particular attention to the fact it will be necessary for Mr. Ginsburg to pay the premium which was due July 9th, 1934, and in connection with which grace expires August 9th, 1934, *next week Thursday,* as policy has been restored to premium paying basis.

"The annual premium due July 9th, 1934, is $152.20 less dividend $24.70, or net of $127.50.

"When July 9th, 1934 premium is paid and Mr. Ginsburg's disability claim is further considered and further action is taken by the Company, then the question of a return of the July 9th, 1934, premium will be given consideration."

This premium and subsequent ones were paid under protest. It must be remembered that in this case, according to the terms of the policy, the defendant agreed to waive the premiums occurring after the disability benefits accrued.

In *Wenstrom v. Aetna Life Ins. Co.,* 215 N. W. 193, the court in a case somewhat similar, said:

"If the insured was entitled to his indemnity, there was no premium due in 1925, and yet, since the com-

pany refused to allow the claim of indemnity, the insured could not afford to take chances in not paying the premium and losing his policy in case he was not entitled to the indemnity.  Since, under the terms of the policy, the appellant was not entitled to the premium in 1925, the insured is entitled to recover the premium paid.''

In *Still v. Equitable Life Assur. Soc.*, 165 Tenn. 224, 54 S. W. (2) 947, the court said:

''.  .  .  The compulsion under which the payments were made is apparent to anyone who appreciates the values of a life insurance contract.  The complainant was so situated that, if he failed to establish the permanency of his disability, he could not hope to obtain other insurance.  Decision could not be postponed and time was of the essence of the matter.  The payments were necessary to preserve valuable rights, and, under the authorities cited we hold they were not voluntary.''

So, in this case, the plaintiff has valuable rights under the terms of the insurance policy, which he probably could not replace on account of his disability and where demand was made upon him by the company and he paid the premiums under protest, awaiting a future determination as to whether or not his disability was such that, by the terms of the policy and under the law, he would be entitled to receive compensation, we think the evidence clearly shows that such payments should be considered as waived by said defendant and should on account of such disability be recovered in this suit by plaintiff.

It is next contended by defendant that the judgment is for too large an amount.  It appears that the original statement of claim was filed May 8, 1935, at which time plaintiff claimed the sum of $1,227.50 was due and payable.  Thereafter on December 4, 1936, an amended statement of claim was filed wherein it was claimed

that the sum of $2,018.80 was due, said amount being for monthly payments due until October 1, 1935, as well as yearly premiums that were subsequently paid in order to keep the policy in force. The trial was had commencing on December 23, 1936. This presents the question:

May a judgment be entered against defendant for the amount of insurance instalments maturing and due after the action was instituted?

It is contended by plaintiff that where an amendment is filed to the declaration, setting forth the amount which is due arising out of the same transaction and that issue is made up before the trial, evidence may be given and judgment entered for the amount due at the time of the hearing. This is true in some actions such as suits on notes where the interest is computed to the date of the judgment, also in suits for rent where the accrual of rent is sometimes entered to the date of judgment and in damage suits it is proper to allege and recover for pain and suffering endured, not only up until the time of the trial but in the future. If this suit had come to us from a court other than the municipal court we would be inclined to follow the logic of the statute as set forth in the Practice Act, ch. 110, par. 163, sec. 39 [Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 104.039], which reads in part as follows:

"Subject to rules, supplemental pleadings, setting up matters which have arisen after the original pleadings were filed, may be filed within a reasonable time by either party by leave of court and upon terms. . . ."

Amended pleadings permitted under this rule would, of course, call for evidence to support such pleadings and a judgment entered in harmony therewith. This case comes to us from the municipal court and there is no rule of the municipal court which we have been able to discover which governs this situation.

In the case of *Hamlin, Hale & Co. v. Race,* 78 Ill. 422, the court said:

"We had supposed no rule was more inflexible or better established than that a plaintiff can not recover for money not due at the institution of the suit. . . . If this rule could be seriously questioned, other cases could be referred to as establishing the rule; but, to our minds, it requires no authority, as it is based upon principles obviously just.

"If, then, a party can not sue for and recover a debt or claim before it is due, why should he do, indirectly, the same thing by suing for a small part when due, and recovering a greater and more substantial part accruing after the suit has been brought? The law never permits that to be done indirectly which it prohibits from being done directly. To permit the recovery of the sums falling due after suit brought, would be an evasion of the rule that the cause of action must be complete when suit is brought. It would be without analogy to any rule of law which now occurs to us. . . ."

Under the law as we find it, we do not believe under the facts here a recovery may be had other than the amount due and owing at the time of the commencement of the suit. The cause of action and amount due in this case depended upon the physical condition of the insured from day to day and, if the plaintiff had recovered his health sufficiently at any time, his cause of action must, necessarily, end. Therefore in the absence of any legislation, rules of court or decisions authorizing such procedure, we believe it is our duty to adhere to the logic and reasoning as set forth in the case of *Hamlin, Hale & Co. v. Race, supra.*

We are of the opinion that the trial court was correct in its finding as to the liability of the defendant, but the court should not have included payments which

became due after the commencement of the suit. The amounts wrongfully included make a total of $716.30 and consists of the items for premiums paid August 8, 1935, of $241.30 and also disability payments from May 8, 1935 to October 1, 1935 at the rate of $100 a month. Said sum of $716.30 is therefore deducted from the judgment entered in the municipal court for the sum of $2,018.80, leaving a balance of $1,302.50 which is the correct amount due and owing to plaintiff from defendant up to the date of filing suit.

Other questions are raised as to the improper admission of evidence and a renewal of the motion by appellee to strike the appellants report of the proceedings. We do not believe any substantial error was committed in this regard.

Inasmuch as the amount of the judgment can be ascertained definitely and a jury trial was heretofore waived, there will be no need of remanding the cause and judgment is entered here.

For the reasons herein stated the judgment of the municipal court is reversed and judgment is entered here for the sum of $1,302.50.

*Judgment reversed and judgment here for $1,302.50.*

HEBEL, P. J., and HALL, J., concur.