Louis S. Ehrenreich, Appellee, v. Massachusetts Mutual Life Insurance Company, Appellant.

Gen. No. 40,521.

Heard in the second division of this court for the first district at the December term, 1938. Opinion filed May 28, 1940.

ECKERT & PETERSON, of Chicago, for appellant; TOM LEEMING, of Chicago, of counsel.

ALFRED NEWTON, of Chicago, for appellee; EUGENE COHEN, of Los Angeles, Calif., and RAYMOND H. HIGH, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant to recover certain benefits alleged to be due under a life insurance contract. The case was tried by the court without a jury, and at the conclusion of plaintiff's evidence defendant moved the

court to find the issues in its favor, which motion was denied. Defendant offered no evidence, rested, and renewed the aforesaid motion, which was denied. The trial court found the issues in favor of plaintiff and assessed plaintiff's damages at the sum of $593.25. Defendant made an oral motion for a new trial, which motion was denied. Judgment was entered upon the finding, and defendant appeals.

The following are the material provisions of the insurance contract in question, policy No. 888,723:

"Benefits

"Provision for Waiver of Premium and Annuity Payment in the Event of Permanent Total Disability

"If the insured, before default in the payment of any premium under this policy and before the anniversary of the policy on which his age at nearest birthday is 65 years, shall furnish due proof to the Company at its Home Office that he has become wholly and permanently disabled so that he is and will be permanently, continuously and wholly prevented thereby from performing any work or engaging in any occupation for compensation or profit, the Company will

"(1) waive the payment of all premiums becoming due under this policy after the expiration of the then current policy year; and

"(2) pay to the insured one per cent. of the face of this policy, exclusive of any paid-up additions, and a like amount each month thereafter during the continuance of said total disability of the insured.

". . .

"Provided that, notwithstanding proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand, furnish due proof to the Company of the continuance of such disability, and if the insured shall fail to furnish such proof all premiums thereafter falling due must be paid in conformity with the conditions of this policy, and the

annuity payments shall cease. . . .'' There is no question as to default in the payment of premiums nor the age of the insured.

Plaintiff had another insurance contract with defendant, policy No. 956,414, which provided that total disability existing continuously for a period of four months shall be deemed permanent. That provision is not contained in the policy in question, No. 888,723.

In November, 1936, plaintiff submitted to defendant, on its form, a ''Claim for Disability Benefits.'' He also submitted to defendant the ''Attending Physician's Statement.'' His claim reads:

''Massachusetts Mutual Life Insurance Company
  ''Springfield, Massachusetts (Part I)
    ''Claim for Disability Benefits
      ''Statement of Insured

| | | |
|---|---|---|
| ''1. | Name of insured. | Louis S. Ehrenreich |
| ''2. | Residence. | Street 5491 Hyde Park Blvd. |
| | | City Chicago, State Ill. |
| ''3. | Policy numbers. | 888,723—956,414 |
| ''4. | Name and address of last employer. | B. C. Ehrenreich 5491 Hyde Park |
| ''5. | State nature of disability. | Broken left arm |
| ''6. | a. When did you become wholly disabled? | a. May 30th, 1936 |
| | b. When did you stop working by reason of present disability? | b. May 30th, 1936 |
| | c. When were you first treated by a physician for present disability? | c. May 30th, 1936 |

"7. a. Does your disability now completely prevent you from engaging in any business or occupation or from performing any work for compensation, gain or profit, even in a limited way?

   a. Yes.

   b. If so, since what date?

   b. May 30th, 1936

"8. a. Will your disability be permanent?

   a. Can't say

   b. If not, about when do you expect recovery?

   b. Don't know

"9. Names and addresses of physicians who have treated you during present disability.

   S. L. Goldberg, 310 S. Michigan
   D. H. Levinthal, 104 S. Michigan

"10. What other insurance do you carry which provides for disability benefits? Include life insurance, fraternal, accident and health insurance, pension funds, sickness benefits, workmen's compensation, Veterans Bureau, etc. State company or organization and amount of benefit now being received, pending, or claimed.

   Equitable Life of the U. S. $5,000

"I hereby authorize the Massachusetts Mutual Life Insurance Company to obtain from any physician or other person who has attended or examined me, any and all information so acquired.

"Sign here Louis S. Ehrenreich

[Here follows jurat.]

"By furnishing this blank and making an investigation, the Company shall not be held to admit the validity of any claim."

The "Attending Physician's Statement" reads:

"MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
"Springfield, Massachusetts     (Part II)
"Attending Physician's Statement
"Disability Claim

"1. Name of claimant.     Louis S. Ehrenreich

"2. Present address.     5491 Hyde Park Blvd., Chicago

"3. Describe Fully the injury, infirmity, or disease causing disability, stating symptoms, physical findings, and diagnosis.
(The opposite page may be used if additional space is required.)

Comminuted fracture lower end of the humerus, extending into the elbow joint with injury to radial and medial nerves. Non-union required open reduction and transplant of radial nerve. Arm has been and is in a cast now. Paralysis of muscle groups supplied by radial nerve.

"4. a. When did the claimant first show symptoms of present illness?
a. May 30, 1936.

b. Date of your first visit in present illness.
b. May 30, 1936.

c. Date of your last visit for treatment in present illness.

c. October 27, 1936.

d. Was claimant under your observation continuously between said dates?

d. Yes.

e. What was claimant's condition at time of last visit?

e. Arm in cast. Some callus formation.

"5. What history of previous illness was given you by the claimant?

Right inguinal hernia repair Sept. 11, 1934.

"6. a. Is the claimant confined in a hospital or sanitarium?

a. No. Was in Michael Reese Hosp.

b. If so, give name of hospital and date of admission.

b. May 30—July 5 and Aug. 7-14, 1936.

c. If not confined in a hospital or sanitarium, is the claimant confined to bed?

c. No.

d. If so, since what date?

d.

e. If not confined in a hospital or sanitarium, or to bed, is the claimant wholly confined indoors?

e. Practically because of huge cast from Aug. 8 to Oct. 5.

f. If so, since what date?

f.

"7. a. Is the claimant able to pursue usual occupation, or any other gainful occupation?

a. No.

b. If not, since what date has claimant been totally unable to engage in any occupation?

b. May 30, 1936.

c. How soon, in your opinion, will claimant be able to resume an occupation? Approximate date.

c. Probably not until Spring, 1937.

d. Is claimant's condition growing worse?

d. No.

"8. Do you consider that the claimant, by reason of present disability, will be permanently, continuously, and wholly prevented from pursuing any and all gainful occupations?

No.

"Dated at Chicago this 3rd day of November, 1936.
"Sign here    Samuel L. Goldberg M.D.
"Address 310 So. Michigan Blvd.
"Chicago, Ill."

On November 23, 1936, defendant sent the following letter to plaintiff:

"Chicago, Ill.
"Nov. 23, 1936

"Mr. Louis S. Ehrenreich,
"5491 Hyde Park Blvd.,
"Chicago, Illinois.

"Re: Pols.# 888,723
956,414

"Dear Mr. Ehrenreich:
"We referred the completed disability claim blank under your above mentioned policies to our Home Office for their consideration.

"We wish to advise that the Company have allowed your claim under Pol. #956,414, which policy contains the four-months clause, accepting May 30, 1936 as the date of beginning of continuous total disability, which, after taking into consideration the four-months waiting period, will make the annuity payments begin as of September 30, 1936. We are enclosing check to your order for $20.00, representing the first two monthly installments of disability annuity of $10.00 each, due September 30th and October 30, 1936. The first waiver of premium under this policy will begin as of the next premium date, April 10, 1937, based, of course, on the continuance of total disability.

"The disability clause in your Pol. #888,723 provides for the specified benefits only in the event of total and permanent disability, without any designated period of continuous total disability as presumptive evidence of permanency. The evidence presented does not justify a presumption of permanency of total disability and your claim under said policy has, therefore, been disallowed.

"Yours very truly,
"Bokum & Dingle, General Agents
"By: E. B. Cassidy

"EJ"

So far as the record shows nothing further was done as to policy No. 888,723 until April 5, 1937, when Attorney Newton, representing plaintiff, addressed a letter to defendant. We do not find this letter in the record, but on April 14, 1937, defendant sent the following letter to Newton:

"April 14, 1937.

"Re Policies Nos. 888723
                    956414—Louis S. Ehrenreich
"Mr. Alfred Newton, Attorney at Law,
"Suite 742, Otis Building,
"10 South LaSalle Street,
"Chicago, Illinois.

"Dear Sir:

"Your letter of the 5th inst., addressed to our Chicago agency, has been referred to this office for attention, same having reference to claim for disability benefits filed with us in November 1936 under the above described policies.

"The last mentioned policy provides that total disability existing continuously for a period of four months shall be deemed to be permanent, and we allowed the insured's claim under this policy, benefits having been continued up to the present time.

"Policy No. 888723 contains no presumption clause such as I have referred to above, but, on the other hand, provides for allowance of the specified benefits only in the event of total and permanent disability. Inasmuch as the evidence submitted last November did not indicate total and permanent disability, we were necessarily obliged to disallow the insured's claim under this particular policy.

"If the insured cares to submit additional evidence at this time, Part No. I of the inclosed claim blank may be completed and executed by him, and Part No. II by his attending physician—the completed blank to be forwarded direct to this office, when the matter will have our further consideration.

"Yours truly,<br>
"J. T. Wells,<br>
"Assistant Secretary.

"JTW:RS
"1 Inc."

Plaintiff then submitted to defendant a second "Claim for Disability Benefits," and a second "Attending Physician's Statement," which read:

"MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY

"Springfield, Massachusetts    (Part I)

"Claim for Disability Benefits

"Statement of Insured

"1. Name of insured.      Louis S. Ehrenreich

"2. Residence.      Street 5491 Hyde Park Boulevard
City Chicago State Illinois

"3. Policy numbers.      888723 Waiver & Annuity

"4. a. Name and address of last employer.      a. B. C. Ehrenreich, Minocqua, Wisconsin.

     b. Last occupation.      b. Assistant Director, Boys Camp, Camp Kawaga, Minocqua, Wisconsin.

"5. State nature of disability.      Total disability left arm

"6. a. When did you become wholly disabled?      a. May 30, 1936

     b. When did you stop working by reason of present disability?      b. May 30, 1936

     c. When were you first treated by a physician for present disability.      c. May 30, 1936

"7. a. Does your disability now completely prevent you from engaging in any business or occupation or from performing any work for compensation, gain or profit, even in a limited way?      a. It has; except that since April 1, 1937 I have been able to perform some of the duties of my occupation

b. If so, since what date?

b. May 30, 1936

"8. a. Will your disability be permanent?

a. My doctors can not say definitely.

b. If not, about when do you expect recovery?

b.

"9. Names and addresses of physicians who have treated you during present disability.

Dr. S. L. Goldberg, 310 S. Michigan Ave.
Dr. Daniel H. Levinthal, (bone specialist) 104 S. Michigan Ave.
Dr. Benjamin Boshes (neurologist)
30 N. Michigan Ave.

"10. What other insurance do you carry which provides for disability benefits? Include life insurance, fraternal, accident and health insurance, pension funds, sickness benefits, workmen's compensation, Veterans Bureau, etc. State company or organization and amount of benefit now being received, pending, or claimed.

$1,000.00 Life Insurance Pol. 956414 Mass. Mut. Life Ins. Co.

$5,000.00 Life Ins. Pol. Equitable Life Assn. Soc. of U. S.

$5,000.00 Life Ins. Pol. Equitable Life Assn. Soc. of U. S.

"I hereby authorize the Massachusetts Mutual Life Insurance Company to obtain from any physician or other person who has attended or examined me, any and all information so acquired.

"Sign here      Louis S. Ehrenreich

"Sworn to before me at Chicago, Illinois
this 17th day of April 1937
"Alfred Newton,
"Notary Public
"By furnishing this blank and making an investigation, the Company shall not be held to admit the validity of any claim."

"MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
"Springfield, Massachusetts        (Part II)
"Attending Physician's Statement
"Disability Claim

"1. Name of claimant.        Louis Ehrenreich
"2. Present address.         5491 Hyde Park Blvd.,
                             Chicago, Ill.

"3. Describe Fully the injury, infirmity, or disease causing disability, stating symptoms, physical findings, operative history, if any, and diagnosis. (The opposite page may be used if additional space is required.)

"4. a. When did the claimant first show symptoms of present illness?        a. May 30, 1936

    b. Date of your first visit in present illness.        b. May 30, 1936

    c. Date of your last visit for treatment in present illness.        c. April 20, 1937

d. Was claimant under your observation continuously between said dates?

d. Yes.

e. What was claimant's condition at time of last visit?

e. Incomplete Anatomic union of bone.

"5. What history of previous illness was given you by the claimant?

Repair of hernia September 11, 1934.

"6. a. Is the claimant confined in a hospital or sanitarium?

a. Physiotherapy three times a week, (3 hrs.)

b. If so, give name of hospital and date of admission.

b. Michael Reese Hospital, May 30, 1936

c. If not confined in a hospital or sanitarium, is the claimant confined to bed?

c. See question 3.

d. If so, since what date?

d. See question 3.

e. If not confined in a hospital or sanitarium, or to bed, is the claimant wholly confined indoors?

e. No.

f. If so, since what date.

f.

"7. a. Is the claimant able to pursue usual occupation, or any other gainful occupation?

a. No.

b. If not, since what date has claimant been totally unable to engage in any occupation?

b. May 30, 1936

c. How soon, in your opinion, will claimant be able to resume an occupation? Approximate date.

c. Approximate date questionable.

d. Is claimant's condition growing worse?

d. Status quo.

"8. Do you consider that the claimant, by reason of present disability, will be permanently, continuously, and wholly prevented from pursuing any and all gainful occupations?

As far as I can reasonably ascertain at the present time, this permanent disability of his arm will continue for an indefinite period of time.

"Dated at ............... this 20th day of April 1937
 "Sign here  Samuel L. Goldberg M.D.
 "Address  310 S. Michigan Blvd.,
  "Chicago, Ill.

"3.—The patient was thrown from a horse May 30, 1936, sustaining a comminuted fracture of the lower end of his left humerus, with several fracture lines extending into the elbow joint completely shattering the articular surface. The left arm was two inches shortened. There was paralysis of the muscles supplied by the radial and median nerves as well as loss of sensation of the skin in the areas supplied by these nerves. There was very obvious deformity of the arm and skin traction was applied after the patient was hospitalized. Several attempts at manipulation and molding the fragments together were unsuccessful and on June 5th a hole was drilled through the olecranon and skeletal traction was set up on a Kirschner wire which was placed through this hole. The patient remained in bed until the 2nd of July at which time

the traction was removed and he was placed in a large cast extending from his neck to his fingers. After six weeks in this cast, non-union of the fragments necessitated open reduction. The radial nerve was caught in the callous and was removed and transplanted. The arm was again placed in a body cast until October 5th, when a part of the cast was removed; the arm has been in a cast all the time until the 1st of March, 1937. The patient was confined to the hospital from the 30th of May to the 7th of July and from August 7th to August 14th, 1936. Since March 1st physiotherapy treatments of three hours duration have been given three times a week, necessitating his being in the hospital during these periods.''

Defendant contends: ''I. Where the provision of a life insurance policy provides for the payment of benefits upon due proof of the total and permanent disability of the insured and the provision raises no presumption of permanency resulting from total disability of a specified duration, the great weight of authority holds that no recovery can be had where the insured has recovered from the disability at the time of the institution of suit. A. There is a distinction to be observed in the meaning attached to the term 'permanent' in the cases where the insurance contract contained a presumption clause and in those cases where no such clause is included for the reason that in the former class of cases permanency is assumed because of the contract provisions while in the latter a showing must be made either by the proofs filed or by the evidence received in court that the disability *at the time the showing is made is, so far as it is possible to ascertain, permanent*. B. Even where the contract contains a presumption clause, the presumption is rebuttable and is rebutted by a showing that the insured had recovered from his total disability prior to the institution of suit. II. Where any disability benefits are

payable under the terms of an insurance policy the period of such benefits begins when proof of disability is made.''

Plaintiff contends: ''Whenever it should appear that the plaintiff was totally disabled and that such disability would, so far as it was possible to ascertain at the time, continue for an indefinite and uncertain period of time, the plaintiff is deemed to be totally and permanently disabled. (a) The fact that plaintiff's total permanent disability ends before suit is instituted is of no import. And if what was once regarded as a total permanent disability proves to be a total temporary disability, the provision of the policy should be construed to render the company liable for the period of total disability only. (b) Where the disability provisions provide that the insurer will pay benefits *during the continuance* of total disability, and provide that on demand the insured must furnish proof *of the continuance of such disability*, the policy is construed to mean that it contemplates the accrual of liability for benefit payments under conditions which may eventually prove temporary only. (c) The word 'permanent' is given the same meaning placed upon it in ordinary usage, and as in case of a 'permanent location' or 'permanent job' or 'permanent structure' or 'permanent wave' the word does not mean everlasting. (d) Although some courts have defined 'permanent' as used in connection with a disability strictly and literally, and give the word the restricted construction urged by defendant, the majority view, the weight of authority, and particularly the courts of Illinois support the more liberal interpretation. II. A provision in an insurance policy requiring due proof as a condition to the payment of disability benefits is complied with if notice is given the insurer either in person, by mail or telephone. III. Doubtful construction must be resolved against the insurer who writes the policy and who thoroughly understands the nature of its contractual

obligations. IV. Where any disability benefits are payable under the terms of an insurance policy containing the provisions as in the policy at bar, the period of such benefits begins when the disability begins. V. Whether the insured was totally and permanently disabled within the meaning of the policy is a question of fact to be decided by the trial judge, who heard the evidence.''

On May 30, 1936, while the policy was in force, plaintiff was thrown from a horse and suffered a comminuted fracture of his left arm. The fracture was a serious one and caused injury to the radial and median nerves in the fractured area. Several operations were performed during the course of the treatments. Defendant concedes, for the purpose of ''the argument, alone,'' that the injuries sustained were ''of such a nature as to totally disable plaintiff from performing the substantial duties of his occupation until April, 1937.''

Plaintiff's father owned a boys' camp in Wisconsin. The camp opened each year on July 2 and closed August 26. Approximately ninety-four boys were enrolled yearly and it was part of plaintiff's duties, after the camp closed and until the commencement of the next season, to call on parents and interest them in sending their boys to the camp. These duties required him to go to Ohio, Missouri, Alabama, Texas, Georgia and Mississippi, and he traveled from place to place in an automobile, which he drove. He was in charge of the camp while it was open and he also took an active part in supervising the physical activities. During the summer of 1936 he was at the camp a part of the time and was consulted by the head counsellor about routine matters, but he did not participate in the physical activities. About April 1, 1937, he commenced calling on camp prospects and was driving his automobile. During his direct examination the following occurred: ''Q. And you proceeded to start to work? A. . . .

in April I commenced driving the car. Q. What did you actually commence to do in connection with your duties at this time in the first of April? A. Making calls on camp prospects. Q. Prior to that day, during the course of this injury and the treatment, had you made any other calls on prospective customers? A. I made no calls. Q. . . . When you did commence to perform some of the functions and duties required of you in your job around the first of April, 1937, did you proceed to work full time and function in full blast? I mean all day or all evening or whatever time you usually worked? A. I would say yes; I was at least seventy-five per cent going. Q. In other words, starting around the first of April, you were actually discharging the substantial duties required of you on your job. A. That is right.'' From April 1, 1937, until the trial of the cause plaintiff performed his usual duties. The instant suit was commenced July 28, 1937. The trial commenced June 13, 1938. It will be noted that the second ''Claim for Disability Benefits'' was signed by plaintiff April 17, 1937. The second statement of the attending physician was signed April 20, 1937. Defendant emphasizes the fact that the attending doctor, in his first statement, in answer to the question, ''How soon, in your opinion, will claimant be able to resume an occupation?'' stated, ''Probably not until Spring, 1937.''

Plaintiff and defendant have devoted much time to the law bearing on the question of the meaning of the word ''permanent'' when used in an insurance contract like the one involved in the present law suit. As we view this appeal it is unnecessary for us to consider the many cases cited by each party in support of its position. The question is, What interpretation shall be given the word ''permanent'' in the instant insurance contract? We are satisfied that the interpretation given that word in the case of *Johnson v. Mutual Trust Life Ins. Co.*, 269 Ill. App. 471, is a reasonable one and just to both parties to the contract. There the court

had before it a policy containing provisions similar to those now before this court. The court states that the real question in the case was whether the plaintiff was totally and permanently disabled within the meaning of the policy, cites the several provisions of the policy bearing upon the question, and after considering the effect of the several provisions, holds (p. 475): "It clearly indicates that the parties intended by this contract that whenever it should appear that the plaintiff was totally disabled and that such disability would, so far as it was possible to ascertain at the time, be permanent, the insured should receive the income and have the premiums waived as provided in his policy, from the time such fact is determined until the insured recovered or died. No other reasonable construction can be given the provisions of the policy in this case. . . ." We approve of this interpretation. To give the word "permanent" a more liberal interpretation would be unfair to the insurance company and would defeat the purpose of the instant type of insurance. In this case it must be borne in mind that the instant insurance contract is not a straight disability contract, nor is it one like the insurance contract that defendant issued to plaintiff (policy No. 956,414), which contains a provision that after total disability has existed for four months the total disability shall be presumed to be permanent.

It would be idle to argue that the claim filed by plaintiff in November, 1936, and the statement of the attending physician in connection with the claim made a prima facie showing that plaintiff was totally and permanently disabled within the meaning of the insurance contract. Plaintiff, in his claim, in answer to the question, "Will your disability be permanent," stated, "Can't say." Plaintiff's opinion would have little, if any, force, but his attending physician, in response to the question, "Do you consider that the claimant, by reason of present disability, will be permanently, continuously,

and wholly prevented from pursuing any and all gainful occupations," answered, "No." And in response to the question, "How soon, in your opinion, will claimant be able to resume an occupation? Approximate date," the physician answered, "Probably not until Spring, 1937." When the second claim was filed, on April 17, 1937, plaintiff had been discharging the substantial duties required of him on his "job" for 17 days. At the time of the trial of this cause he had been performing the duties of his position for approximately 14 months. Upon the trial plaintiff, in an effort to make out a case, was allowed great latitude, but the patent outstanding facts made it impossible for him or his physician to prove "that he is and will be permanently, continuously and wholly prevented thereby from performing any work or engaging in any occupation for compensation or profit," within the meaning of the contract of insurance in question. It is only fair to defendant to note that defendant allowed plaintiff's claim for benefits under policy No. 956,414. We are constrained to hold that the trial court erred in finding for plaintiff.

The judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

SULLIVAN, P. J., and FRIEND, J., concur.