## Everett F. Greimann, Appellant, v. Travelers Insurance Company, Appellee.

### Gen. No. 43,473.

Opinion filed May 29, 1946.   Released for publication June 13, 1946.

BENJAMIN H. VANDERVELD, of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; DAVID JACKER, CHARLES R. MORROW and CHARLES M. RUSH, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant upon two insurance certificates issued to him by defendant. The parties, by stipulation, submitted the cause to the court, who, after hearing the evidence and the arguments of counsel, found the issues against plaintiff, and he appeals from a judgment entered upon the finding.

The report of the trial proceedings contains the following "Statement of Facts":

"That on to-wit, July 10th–1929, the plaintiff, Everett Greinmann, was employed by the Edison Electric Appliance Co., Inc., which company had at that time a master group insurance contract with the defendant, The Travelers Insurance Company, to insure its employees under a contract of insurance known as Group Contract No. G682.

"On July 10th–1929, there was issued to plaintiff by defendant an individual policy of insurance for $500.00, certificate #9539, and later on November 2nd–1937, an additional certificate #9539X, for $2000.00 was issued to him, subject to the conditions of said master-contract, copy of which is hereto attached as Exhibit 3. In 1939 by automatic increases the insurance value of said policies attained a face value of $3600.00. Said policies are attached to this statement of facts as plaintiff's Exhibits 1 and 2.

"Both policies contained a provision as to Permanent Total Disability Benefits, which provisions as stated in Exhibit 1 read as follows:

" 'If any Employee shall furnish the Company with due proof that while insured under this contract and before having attained the age of sixty, *he has become wholly disabled by bodily injuries or disease, and will*

*be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment· for wage or profit,* the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under this contract the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of instalments chosen by the Assured, the first instalment to be paid immediately upon receipt of due proofs of such disability. Any instalments remaining unpaid at the death of the Employee shall be payable as they become due to the beneficiary designated by such Employee. Such remaining instalments may be commuted into one sum on the. basis of interest at the rate of three and one-half per cent, per annum. [Italics ours.]

" 'In addition to and independently of all other causes of permanent and total disability the Company will consider the entire and irrecoverable loss of the sight of both eyes, or of the use of both hands, or of both feet, or of one hand and one foot, as permanent total disability within the meaning of this contract.'

"The foregoing provision is identical with that as contained in Exhibit 2, with the exception, that ·the provision as to a choice as to the number of installments, is eliminated.

"On February 20th–1939, the plaintiff, Everett F. Greinmann, while in the employ of the Edison Electric Appliance Co., Inc., and while under the age of 60 years, became mentally ill, and on February 20th–1939 was adjudged insane and duly committed to the Alton State Hospital, Alton,· Illinois; and on October 16th–1940, Kathleen Greinmann, his wife, was duly appointed as his Conservatrix in the Probate Court of Cook County, Illinois.

"The defendant, The Travelers Insurance Company, was advised of plaintiff's disability on or about July 9th–1940, and formal proof was made by the conserva-

trix. On October 31st–1940 the Insurance Company made a payment to the Conservatrix, on account, of said permanent disability of $587.99, the same being initial installment of $500.00, and $87.99 as the first of a series of monthly installments of like amount. Said installment payments were made until the sum of approximately $2400 was paid, leaving a balance of $1143.87 unpaid, said sum being the subject matter of this suit.

"That prior to said initial payment, the Conservatrix, without leave of the Probate Court being first obtained, executed an agreement with the defendant that the monthly payments would be discontinued if at any time the plaintiff was sufficiently recovered so as to enable him to resume gainful occupation, copy of which is hereto attached as Exhibit 4.

"On March 7th–1941 the plaintiff was paroled from the Alton State Hospital, and on July 1st–1941 was discharged as having been restored to sanity.

"Payments were continued, however, by the defendant until the month of September, 1942, when it ceased to make any further payments because plaintiff was and had been working at a gainful occupation since June of 1942. The estate was then closed in the Probate Court on December 9th–1942, and the Conservatrix was discharged.

"It was stipulated by and between the parties herein that the Plaintiff resumed working at a gainful occupation in June of 1942 and had continued to be engaged in a gainful occupation of employment up to the trial date.

"Suit was brought for the unpaid balance in the Municipal Court of Chicago, and from a judgment for the defendant, this appeal is made."

Plaintiff's theory is "that upon his being adjudged insane, he became permanently disabled under the provisions of the policies, and that after having made proper proof of said disability, and the same having

been accepted by the defendant, he became entitled to the full face amount of the certificates, and the only question to be determined was the number of installments and amount of each. That his subsequent restoration to reason, did not release the defendant from further payment of the installments, the liability having been once determined and fixed according to the terms of the contract.''

Defendant's theory is: ''Defendant's principal contention is that under the terms of its insurance contract it was not liable to make any further payments to plaintiff when it became evident that his disability was not permanent; . . . that the basic requirement of permanency is not changed or waived by its commencing payments for an *apparent* permanent disability which later turns out to be temporary. Benefits paid by defendant for approximately two years were made under a state of facts *existing then.* Although subsequent recovery of plaintiff caused defendant to cease these payments, defendant is not seeking to recover the payments voluntarily made and makes no claim nor will assert any claim to recover them.''

Plaintiff, in support of his position, cites *Hanon v. Kansas City Life Ins. Co.,* 269 Ill. App. 135. There it appeared that John Hanon was found to be insane on December 22, 1927, and was sent to the State Hospital for the Insane at Jacksonville, Illinois, where he remained for about six months, when he was discharged *on parole* and returned to his home on a farm where he died January 20, 1931. The Appellate court stated (p. 138): ''Two questions of mixed law and fact are presented for determination: (1) Was there such a total permanent disability caused by bodily disease that continuously and wholly prevented him *for life* from pursuing any and all gainful occupations; (2) whether proof of such disability was received by the company?'' After reviewing the evi-

dence the court held (p. 144): "Our conclusion is that John Hanon was, during his period of insanity, of total permanent disability caused by disease and was continuously and wholly prevented thereby *for life* from pursuing any and all gainful occupations under the proofs as established by the evidence in this case." (Italics ours.) The court further held (p. 143): "The judgment of the county court finding him to be insane has never been vacated and his natural condition as a person *sui juris* had never been restored. The presumption is that after a person has been adjudicated to be insane, the insanity continues, and the burden is upon anyone who asserts the contrary to prove it." Hanon had maniacal spells and he was shot and killed by his brother-in-law to prevent him from killing his wife. In the instant case the plaintiff was on July 1, 1941, "discharged as having been restored to sanity," and it was stipulated by the parties "that the plaintiff resumed working at a gainful occupation in June of 1942 and had continued to be engaged in a gainful occupation of employment up to the trial date." We deem it necessary to notice only three of the other cases cited by plaintiff, viz: *Ehrenreich v. Massachusetts Ins. Co.*, 305 Ill. App. 584; *Ginsburg v. Prudential Ins. Co.*, 294 Ill. App. 324; *Heralds of Liberty v. Jones*, 142 Miss. 735, 107 So. 519. The *Ehrenreich* case was decided by this Division of the court. There the plaintiff was not attempting to recover payments after he had recovered from his physical disabilities. The contract in that case provided (pp. 585, 586):

"If the insured, before default in the payment of any premium under this policy and before the anniversary of the policy on which his age at nearest birthday is 65 years, shall furnish due proof to the Company at its Home Office that he has become wholly and permanently disabled so that he is and will be permanently, continuously and wholly prevented thereby from performing any work or engaging in

any occupation for compensation or profit, the Company will

"(1)  waive the payment of all premiums becoming due under this policy after the expiration of the then current policy year; and

"(2)  pay to the insured one per cent. of the face of this policy, exclusive of any paid-up additions, and a like amount each month thereafter during the continuance of said total disability of the insured.

". . .

"Provided that, notwithstanding proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand, furnish due proof to the Company of the continuance of such disability, and if the insured shall fail to furnish such proof all premiums thereafter falling due must be paid in conformity with the conditions of this policy, and the annuity payments shall cease. . . ."

We held that the claim filed by the plaintiff and the statement of his attending physician in support of the claim did not make out a *prima facie* showing that the plaintiff was totally and permanently disabled within the meaning of the insurance contract. We further held that the plaintiff's proof showed that he was not wholly and permanently disabled and that he had been performing the duties of his position for approximately fourteen months before the trial. We reversed the judgment of the trial court awarding the plaintiff damages in the sum of $593.25. As to *Ginsburg v. Prudential Ins. Co., supra,* it is sufficient, for the purposes of this appeal, to state that the plaintiff therein was asking to recover only for the time that he was totally disabled, which disability ended October 1, 1935, and the court held that the proof clearly showed that the plaintiff's total disability continued until that time, and that he was entitled to a judgment for the instalments that were due during the period of his total disability. Plaintiff relies very strongly

upon the case of *Heralds of Liberty v. Jones, supra,* but in that case there was a clause in the contract that provided for a lump sum disability payment and not for payments in instalments. The contract also contained the following clause (p. 519) : " . . . Without prejudice to any other provision, such total disability shall be presumed to be permanent after the member has been continuously so disabled for not less than six months and during all that period incapacitated from engaging in any occupation for remuneration or profit." The decision of the court was based upon this last clause. In the instant case the contract provides for payments in instalments and it contains no presumption provision. No case is cited by plaintiff that supports his position.

Defendant cites *Paul v. Missouri State Life Ins. Co.,* 228 Mo. App. 124, 52 S. W. (2d) 437, in support of its position. The following are the material portions of the policy sued upon in that case (p. 437) :

" 'If the Employee shall furnish the Company due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to the Employee in full settlement of all obligations hereunder, the amount of insurance in force hereunder on the Employee at the time of the approval by the Company of the proofs as aforesaid. . . .' "

The insured in that case elected to take the one sum settlement. It appeared from the agreed statement of facts that the plaintiff was injured about December 19, 1928, while engaged in his duties as an employee of the Missouri Pacific Railroad Company and that as a result of the injuries he was confined in the hospital or under the control of the Missouri Pacific Hospital

and under the care of doctors and physicians from the date of the accident until about June 15, 1930; that during all of said time he was unable to pursue any gainful occupation for a period of eighteen months and that at the expiration of six months after the accident his disability was of such a character that the physicians were unable to tell how long the disability would continue. The plaintiff sued to recover the sum of $2,000 payable under the contract. On June 15, 1930, plaintiff resumed his work as a boiler maker helper for the Missouri Pacific Railroad and since that time has been so engaged and employed. The defendant refused to pay any sum and denied liability under the contract. The court in the *Paul* case distinguishes the *Heralds of Liberty* case, saying (p. 439):

"The case is also unlike that of *Heralds of Liberty v. Jones*, 142 Miss. 735, 107 So. 519. In that case the policy provided that if a member should become totally and permanently disabled and such disablement should continue for six months, it would be presumed to be permanent. It was held in that case that plaintiff was entitled to payment for total disability, although he recovered after the expiration of the six months' period. Of course, there is nothing in the language in the policy now under discussion similar to that in the *Jones* Case."

After a review of the authorities and the law bearing upon the question before the court, the opinion states (p. 441):

" 'In *insurance parlance* the phrase "totally and permanently disabled" contemplates a physical condition at the time of the claim which reasonably convinces the judging authorities that (a) the subject is then totally disabled, and (b) will so remain for life.' *Metropolitan Life Ins. Co. v. Noe, supra*, 161 Tenn. 335, 31 S. W. (2d) loc. cit. 690. (Italics ours.)

"Being of the opinion that the plaintiff failed to show that at the end of the six months' period in

question he had suffered a permanent disability, that is, one that would be reasonably certain to continue during life, he was not entitled to recover and the judgment should be affirmed. It is so ordered.''

The concurring opinion states (p. 442):

''But how can it [referring to the plaintiff's injury], or the condition produced thereby, be presumed to continue indefinitely, when there, before the court, stands the man in full health and vigor and with complete ability to work, showing that it has *not* continued and will not continue indefinitely, but has come to an end before the suit was brought?

''To hold that plaintiff, in such circumstances, is entitled to recover is to ignore entirely the clause requiring that the insured shall furnish the company with 'due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, *and* that he or she is *then,* and will be *at all times thereafter,* wholly prevented thereby from engaging in any gainful occupation.' '' The judgment for the defendant entered by the trial court was affirmed. In *Tila v. Travelers Ins. Co.,* 55 N. Y. S. 2d 401, the policy provided for payment of benefits upon due proof that ''the insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit.'' This provision is identical with the one present in the instant case. In that case it appeared that the insured was adjudged an incompetent and sent to the State Hospital; that about six years after he was sent there he was *paroled* and was gainfully employed as a farm hand, and his committee sought to recover benefits under the policy for the period during such employment. The opinion of the court is short, and we quote it in full (p. 402):

''Per Curiam.

"The undisputed facts submitted in support of the motion for summary judgment establishes that the insured was not disabled from engaging in gainful occupation during the period for which disability benefits are sought. The insured was profitably employed during the period as a farm hand, performing to the satisfaction of his employers all of the duties attending such employment. The adjudication of the insured as an incompetent in 1936, is not determinative of the issue of his competency in 1943. *Pickup, as Committee, v. Traveler's Ins. Co.,* No. 702, November, 1940, Term. The evidential value of the adjudication to the plaintiff was overcome by the insured's discharge from parole and by the facts relating to his actual employment."

Defendant contends that if it had refused to make any payments to plaintiff and the latter was now suing for disability benefits from the time he was adjudged insane until the time he sued, plaintiff would not be allowed to recover anything, because the evidence shows beyond a doubt that he actually never was permanently disabled, and in support of this contention defendant cites *Harris v. Metropolitan Life Ins. Co.,* 325 Ill. App. 182, which supports the contention. However, it is not necessary for us to pass upon the instant contention for the reason that defendant states that it "is not seeking to recover the payments voluntarily made and makes no claim nor will assert any claim to recover them."

Defendant's contention that in any event it was not liable under the terms of its insurance contract to make any further payments to plaintiff when it became evident that the latter's disability was not permanent, must be sustained. In our view of this appeal defendant has not only treated plaintiff fairly, but its conduct in making payments for fourteen months after he had been discharged from the State Hospital, restored to sanity, was generous treatment.

134

The judgment of the Municipal court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.